UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IRA HEASTON,

                              Plaintiff,

                                                    **SECOND**
                                                    **AMENDED**
                                                    **COMPLAINT**

              -against-                             Jury Trial
                                                    19 CV 5569 (PKC) (VMS)

THE CITY OF NEW YORK,
P.O. JOSEPH ESSIG,
DET. RAMON PORTILLO,
P.O. AMANDA LORBER f/k/a AMANDA MUROLO,

                              Defendants.

-----------------------------------------------------------------X

              Plaintiff IRA HEASTON by and through his attorney, Vik Pawar, Esq.,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

       1.     Plaintiff brings this action for compensatory damages, punitive damages

and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights,

as secured by statutes and the Constitution of the State of New York and the United States.

## JURISDICTION

       2.     The action is brought pursuant to 42 U.S.C. §§1983, and 1988, and the

Fourth and Fourteenth Amendments to the United States and New York Constitutions.

       3.     Jurisdiction is found upon 28 U.S.C. §§1331, 1343 and 1367.  Plaintiff has

complied with conditions precedent to file suit on his state law claims.

**VENUE**

4.      Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claim arose.

**JURY DEMAND**

5.      Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

**PARTIES**

6.      Plaintiff is a citizen of the United States, and at all relevant times a resident of the County of Queens, City and State of New York.  Plaintiff, his wife, daughter and son are African-American.

7.      Defendant City of New York (hereinafter "City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendants Joseph Essig, Ramon Portillo and Amanda Lorber are or were officers assigned to the 107th precinct who acted under the color of state law and are sued in their individual capacities.

9.      The individual NYPD defendants are referred to as NYPD defendants.

**FACTS**

10.      Plaintiff entered into a lease to rent a second- floor apartment at 8421 Chapin Parkway, Queens, New York ("subject premises").

11.     The lease was to commence on January 15, 2019 and run through January 15, 2021, a term of two years.

12.     Plaintiff made the duly required payments of security deposits and paid their monthly rents.

13.     On April 4, 2019, at approximately 7:30 p.m., plaintiff, his wife, 7 year-old daughter and 3 year-old son were locked out of the subject premises.  This was the second such incident by the landlord of the subject premises.

14.     Following this second illegal lock-out, plaintiff sought the intervention of the New York City Court ("NYC Court") because he had a wife and two minor children who were once again inconvenienced by the illegal conduct and lockout.

15.     After a hearing on or about April 9, 2019, the NYC Court issued an Order directing that plaintiff and his family be allowed to regain possession of the subject premises and directed the NYPD to assist plaintiff and restore their rights within the subject premises.  See Exhibit 1.

16.     On April 26, 2019, at approximately 2 p.m., plaintiff and his family were once again locked out illegally.

17.     Plaintiff called the 107th precinct and requested assistance because his family was experiencing the same type of harassment and now the family's property inside the subject premises was missing.

18.     When the NYPD Defendants arrived on the scene, plaintiff and his family were present at the subject premises.

19.    Plaintiff informed the NYPD Defendants about the history of the subject premises and also showed them a copy of the NYC Court's Order (exhibit 1) about directing the NYPD to assist plaintiff and his family to gain access to the subject premises.

20.    Astonishingly, the NYPD Defendants arrested plaintiff and ignored his pleas to look at the facts, the lease and the NYC Court's Order.

21.    Plaintiff was arrested and taken to the 107th precinct where he was booked like a criminal and had his mugshot and finger-prints taken and arrest processed.

22.    Plaintiff was then transported to Central Booking and then released after approximately 20 hours in NYPD's custody.

23.    All charges against the plaintiff were dismissed.

24.    Afraid to have to go through these traumatic experiences, plaintiff and his family refused to go back to the subject premises.

## AS AND FOR A FIRST CAUSE OF ACTION
(Unlawful Seizure/False Arrest/Unlawful imprisonment)

33.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

34.    On April 26, 2019, NYPD Defendants arrested plaintiff without probable cause.

35.    Plaintiff was aware of his confinement and the confinement was neither justified nor privileged.

36.    Plaintiff was unlawfully seized and apprehended without his consent.

37.    Plaintiff had his arrest processed and spent more than 20 hours in custody

of the NYPD Defendants.

38.      NYPD Defendants drafted a criminal court complaint which contained false charges and facts.

39.      NYPD Defendants forwarded the criminal court complaint to the District Attorney's Office knowing that the DA's office would initiate prosecution against plaintiff.

40.      NYPD Defendants were aware that there was no probable cause to seize plaintiff let alone initiate criminal proceedings against him.  Therefore, they acted with malice.

41.      In addition, NYPD Defendants failed to make an attempt to retract the false charges based on fabricated facts.  Their actions were reckless and disregard for the truth because they knowingly filed false and unsubstantiated charges against Plaintiff, failed to drop them, or inform the District Attorney's office of the falsity of the charges and instead pursued the charges knowing full well that the charges were not only false but trumped up, and fabricated by them.

42.      NYPD defendants failed to undertake a proper investigation and simply arrested plaintiff because he "looked like another black male suspect."

43.      Had the NYPD defendants done the simplest of investigation or looked at the order issued by the NYC Civil Court (exhibit 1) they would have learned that plaintiff was a victim and not a suspect.

44.      However, in an effort to simply close out a fabricated "open investigation" the NYPD defendants arrested plaintiff and falsely charged him with breaking the law.

45.     As a result of the aforementioned conduct of the NYPD Defendant Plaintiff's constitutional right to be free from unlawful seizure, assault, false arrest/imprisonment were violated and plaintiff and his family suffered injuries.

### AS AND FOR A SECOND CAUSE OF ACTION
(*Respondeat Superior* liability under the laws of the State of New York)

46.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.     Defendant City is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) full and fair compensatory damages in an amount Five Hundred Thousand Dollars for each and every cause of action for plaintiff against defendants (individually or collectively) or as determined by a jury:

(B) punitive damages in an amount to be determined by a jury;

(C) reasonable attorney's fees and the costs, expenses and disbursements of this action; and

(D) such other and further relief as appears just and proper.

Dated:  New York, New York
        March 9, 2020

                              By:/s
                                  Vik Pawar, Esq. (VP9101)



DISTRICT ATTORNEY QUEENS COUNTY
125-01 Queens Boulevard
Kew Gardens, New York 11415-1568
718-286-6000

Richard A. Brown
District Attorney

April 26, 2019

IRA HEASTON
147-31 SPRINGFIELD LANE
SPRINGFIELD GARDENS, NY 11413

Dear Mr. HEASTON:

Please be advised that a review of the records of the Queens County District Attorney's Office indicates that your arrest under arrest number: Q19615970, arrest date: 04/26/2019, was dismissed by this Office prior to Criminal Court arraignment.

This serves as a final disposition of this arrest number.

A sealing order has been or will be filed by this Office with the Division of Criminal Justice Services (DCJS) and the New York City Police Department.

You should confirm with DCJS that this record has been sealed by calling 1-800-262-DCJS or writing to:

> The New York State Division of Criminal Justice Services
> 80 South Swan Street
> Albany, New York 12210
> Attention: Sealing Unit

Very truly yours,

KATERI GASPER
ASSISTANT DISTRICT ATTORNEY

Your copy

## WARNING TO RESPONDENT
## YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN
## THE AWARD OF POSSESSION TO THE PETITIONER

--------------------------------------------------------------------

## Civil Court of the City of New York
County of _Queens_

Part ___

Index Number ___

Ira Heaston Family

Petitioner,

against

BURIS Inc (known address)
8421 CHAPIN PKWY         Respondent
Jamaica Hills, NY 11432

**ORDER TO SHOW CAUSE
IN LIEU OF NOTICE OF PETITION
TO RESTORE TO POSSESSION
[No Existing Proceeding]**

Address: ___
(Address of Premises)

___ Apt. # ___

Upon the annexed Verified Petition of _Ira Heaston_,

the above named Petitioner(s), sworn to on _April 5th, 2019_,

LET the Respondent(s) or Respondent(s) attorney(s) show cause at a Motion Term of the:
**Civil Court of the City of New York**

Located at: _89-17 Sutphin Boulevard Jamaica Ny 11435_

on: _April 19 2019_, at _9__ . M., in Housing Part: _B_ , Room ___

or as soon thereafter as counsel may be heard, why a Judgment should not be rendered:

AWARDING AND RESTORING the Petitioner(s) to possession of the premises;
ISSUING A WARRANT OF EVICTION, FORTHWITH, together with costs and disbursements;
AWARDING TREBLE DAMAGES following RPAPL § 853; and/or
GRANTING such other and further relief as may be just.

PENDING the hearing of this proceeding and the entry of a Judgment thereon, Respondent(s) and Respondents
attorney(s) or agent(s) is/are:

1. [ ] Stayed from re-letting the subject premises;
2. [ ] Stayed from removing any of the contents of the premises;
3. [ ] Ordered to permit Petitioner access for the limited purpose of obtaining Petitioner's possessions;
4. [ ] ___
5. [ ] ___

SERVICE of a copy of this Order, together with the annexed Verified Petition, upon the Respondent(s)
(Personally) (by Certified Mail, Return Receipt Requested) on or before ___
shall be deemed good and sufficient. Proof of such service may be filed in the Clerk's Office of Housing Part before the
return date of this Order to Show Cause, or on the date of trial with the Clerk in the Part indicated above. Petitioner may
serve these papers in person.

_April 5th 2019_
_____
Date

_____
Judge, Housing/Civil Court

CIV-LT-75 (Revised, March, 2000) [3 ply]

**CIVIL COURT OF THE CITY OF NEW YORK**

County of _Queens_

_____
Part

IRA Heaston _Petitioner,_
Fam -against-

Salim
Boris Inc _Respondent(s)._
_____

[Please Press Hard]

Index Number _____

**VERIFIED PETITION IN SUPPORT OF ORDER TO SHOW CAUSE**
To Restore to Possession
**[RPAPL § 713 (10)]**

PETITIONER'S ADDRESS

_____ Apt. _____
_____ N.Y. _____
County         City         State      Zip code

1. I, Petitioner, _[print your name]_ __Ira Heaston__ am the lawful occupant of the apartment/space listed above as Petitioner's address and have been in possession of that apartment/space since _[print date]_ _01-11-2019_ (your address will be called "apartment/space" in this document).

2. Respondent(s) _[print name(s)]_ __Boris Inc__ is/are the _[owner(s)/landlord(s)/roommate(s)/other]_ __owner/landlord__ of the apartment/space and is/are in possession of the apartment/space at this time.

3. Respondent(s) unlawfully or with force entered the apartment/space **or** Respondent(s) remained in possession of the apartment/space unlawfully or with force, keeping me from possession.

4. Respondent(s) did the above on _[print date]_ _04-04-2019_, at _[print time]_ _7:40_ a.m./p.m.

5. Respondent(s) continue to keep me from possession.

6. Respondent(s) or Respondent's(s') predecessor in interest did not quietly possess the apartment/space for three years before Respondent(s) entered or remained in possession of the apartment/space unlawfully or with force.

7. When Respondent took over the apartment/space, I physically occupied the apartment/space peaceably **or** I had a right to occupy the premises because of a lease or other legal basis. **No court order exists directing me to stay away from the apartment/space, including any restraining orders or orders of protection.**

8. I request that the court enter a judgment: _I need to get in my apartment today for my ___

a) awarding and restoring to me possession of the apartment/space, pursuant to RPAPL § 713 (10);
b) providing for the issuance of a warrant of eviction immediately, together with costs and disbursements; and
c) awarding me triple damages pursuant to RPAPL § 853. _we really need to get back in_

9. I also request that the court give me permission to serve these papers in person, and such other relief as this Court _ourt_ deems proper. _my daughter is 7 yrs old and my son is 2 yrs old._

10. No prior application has been made for the relief sought in this document.

**VERIFICATION**

_[Print your name]_ __Ira Heaston__, being duly sworn, deposes and says: I am the Petitioner named above and I have read the petition and know the truth of its contents except for those matters alleged to be on information or belief and, as to those matters, I believe them to be true.

_____
_[Sign Your Name]_ Signature of Petitioner

_____
Signature and Title of Court Employee

CIV-LT-15 ( Revised July, 2011)

Sworn to me this _____ day of _____, 20 __

NAME: Heaston

DATE: 4 / 5 / 19

TIME: 1 34 pm

## ILLEGAL LOCK-OUT

HP

## HARASSMENT

YOU WILL BE REQUIRED TO WAIT WHILE THE
JUDGE
SIGNS THE PAPERS
WAITING TIMES MAY VARY.

DO NOT WAIT ON LINE &
DO NOT WAIT IN THE HALLWAY.

GO DIRECTLY TO WINDOW #5
TO CHECK FOR YOUR PAPERS.

GO DIRECTLY TO ROOM 357 (3RD FLOOR),
CASHIER'S OFFICE FOR THE INDEX #.

RETURN TO ROOM 209 - WINDOW #5

New York Residential Lease Agreement

THIS LEASE AGREEMENT (hereinafter referred to as the "Agreement") is made and entered into this ___15 th___ day of
__January__, 20 19, by and between
_____Selim Biblo_____ (hereinafter, referred to as "Landlord") and
_____Ira Heaston_____ (hereinafter referred to as "Tenant")

WITNESSETH:

WHEREAS, Landlord is the fee owner of certain real property being, lying and situated in ___Queens___ County,
New York, such real property having a street address of ___S+21 Chapin Pkwy_____
(hereinafter referred to as the "Premises").

WHEREAS, Landlord is desirous of leasing the Premises to Tenant upon the terms and conditions as contained herein; and

WHEREAS, Tenant is desirous of leasing the Premises from Landlord on the terms and conditions as contained herein.

• NOW, THEREFORE, for and in consideration of the sum of TEN DOLLARS ($10.00), the covenants and obligations
contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties
hereto hereby agree as follows:

1.  **TERM.** Landlord leases to Tenant and Tenant leases from Landlord the above described Premises together
    with any and all appurtenances thereto, for a term of ___2-4_____ [specify number of months or
    years], such term beginning on ___January 15 2019___, and ending at 12 o'clock midnight on
    __January 15 2021__.

2.  **RENT.** The total rent for the term hereof is the sum of
    __Sixty three thousand six hundred_____ DOLLARS ($ 63,600 )
    payable on the ___1___ day of each month of the term, in equal installments of
    __Two thousand six hundred fifty_____ DOLLARS ($ 2,650 )
    first and last installments to be paid upon the due execution of this Agreement, the second installment to be
    paid on __March 1 2019__. All such payments shall be made to Landlord at Landlord's address as
    set forth in the preamble to this Agreement on or before the due date and without demand.

3.  **DAMAGE DEPOSIT.** Upon the due execution of this Agreement, Tenant shall deposit with Landlord the sum of
    __Two Thousand dollars_____ DOLLARS ($ 2,000 ) receipt
    of which is hereby acknowledged by Landlord, as security for any damage caused to the Premises during the
    term hereof. Such deposit shall be returned to Tenant, without interest, and less any set off for damages to the
    Premises upon the termination of this Agreement.

4.  **USE OF PREMISES.** The Premises shall be used and occupied by Tenant and Tenant's immediate family,
    consisting of __White Horse son_____, "___Dwight CC__" exclusively, as a
    private single family dwelling, and no part of the Premises shall be used at any time during the term of this
    Agreement by Tenant for the purpose of carrying on any business, profession, or trade of any kind, or for any
    purpose other than as a private single family dwelling. Tenant shall not allow any other person, other than
    Tenant's immediate family or transient relatives and friends who are guests of Tenant, to use or occupy the
    Premises without first obtaining Landlord's written consent to such use. Tenant shall comply with any and all
    laws, ordinances, rules and orders of any and all governmental or quasi-governmental authorities affecting the
    cleanliness, use, occupancy and preservation of the Premises.

5.  **CONDITION OF PREMISES.** Tenant stipulates, represents and warrants that Tenant has examined the
    Premises, and that they are at the time of this Lease in good order, repair, and in a safe, clean and tenantable
    condition.

6.  **ASSIGNMENT AND SUB-LETTING.** Tenant shall not assign this Agreement, or sublet or grant any license to
    use the Premises or any part thereof without the prior written consent of Landlord. A consent by Landlord to
    one such assignment, sub-letting or license shall not be deemed to be a consent to any subsequent
    assignment, subletting or license. An assignment, sub-letting or license without the prior written consent of
    Landlord or an assignment or sub-letting by operation of law shall be absolutely null and void and shall, at
    Landlord's option, terminate this Agreement.

7.  **ALTERATIONS AND IMPROVEMENTS.** Tenant shall make no alterations to the buildings or improvements on
    the Premises or construct any building or make any other improvements on the Premises without the prior
    written consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed or placed
    on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and
    Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier
    termination of this Agreement.

8.  **NON-DELIVERY OF POSSESSION.** In the event Landlord cannot deliver possession of the Premises to
    Tenant upon the commencement of the Lease term, through no fault of Landlord or its agents, then Landlord or
    its agents shall have no liability, but the rental herein provided shall abate until possession is given. Landlord or

event possession cannot be delivered within such time, through no fault of Landlord or its agents, then this Agreement and all rights hereunder shall terminate.

9. **HAZARDOUS MATERIALS.** Tenant shall not keep on the Premises any item of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire or explosion on the Premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

10. **UTILITIES.** Tenant shall be responsible for arranging for and paying for all utility services required on the Premises.

11. **MAINTENANCE AND REPAIR; RULES.** Tenant will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof. Without limiting the generality of the foregoing, Tenant shall:

    (a) Not obstruct the driveways, sidewalks, courts, entry ways, stairs and or halls, which shall be used for the purposes of ingress and egress only;

    (b) Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order and repair;

    (c) Not obstruct or cover the windows or doors;

    (d) Not leave windows or doors in an open position during any inclement weather;

    (e) Not hang any laundry, clothing, sheets, etc. from any window, rail, porch or balcony nor air or dry any of same within any yard area or space;

    (f) Not cause or permit any locks or hooks to be placed upon any door or window without the prior written consent of Landlord;

    (g) Keep all air conditioning filters clean and free from dirt;

    (h) Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were constructed. Tenant shall not allow any sweepings, rubbish, sand, rags, ashes or other substances to be thrown or deposited therein. Any damage to any such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be borne by Tenant;

    (i) And Tenant's family and guests shall at all times maintain order in the Premises and at all places on the Premises, and shall not make or permit any loud or improper noises, or otherwise disturb other residents;

    (j) Keep all radios, television sets, stereos, phonographs, etc. turned down to a level, of sound that does not annoy or interfere with other residents;

    (k) Deposit all trash, garbage, rubbish or refuse in the locations provided therefor and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements;

    (l) Abide by and be bound by any and all rules and regulations affecting the Premises or the common area appurtenant thereto which may be adopted or promulgated by the Condominium or Homeowners Association having control over them.

12. **DAMAGE TO PREMISES.** In the event the Premises are destroyed or rendered wholly untenantable by fire, storm, earthquake, or other casualty not caused by the negligence of Tenant, this Agreement shall terminate from such time except for the purpose of enforcing rights that may have then accrued hereunder. The rental provided for herein shall then be accounted for by and between Landlord and Tenant up to the time of such injury or destruction of the Premises. Tenant paying rentals up to such date and Landlord refunding rentals collected beyond such date. Should a portion of the Premises thereby be rendered untenantable, the Landlord shall have the option of either repairing such injured or damaged portion or terminating this Lease. In the event that Landlord exercises its right to repair such untenantable portion, the rental shall abate in the proportion that the injured parts bears to the whole Premises, and such part so injured shall be restored by Landlord as speedily as practicable, after which the full rent shall recommence and the Agreement continue according to its terms.

13. **INSPECTION OF PREMISES.** Landlord and Landlord's agents shall have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and all buildings and improvements thereon. And for the purposes of making any repairs, additions or alterations as may be deemed appropriate by Landlord for the preservation of the Premises or the building. Landlord and its agents shall further have the right to exhibit the Premises and to display the usual "for sale", "for rent" or "vacancy" signs on the Premises at any time within forty-five (45) days before the expiration of this Lease. The right of entry shall likewise exist for the purpose of removing placards, signs, fixtures, alterations or additions, but do not conform to this Agreement or to any restrictions, rules or regulations affecting

14. **SUBORDINATION OF LEASE.** This Agreement and Tenant's interest hereunder are and shall be subordinate, junior and inferior to any and all mortgages, liens or encumbrances now or hereafter placed on the Premises by Landlord, all advances made under any such mortgages, liens or encumbrances (including, but not limited to, future advances), the interest payable on such mortgages, liens or encumbrances and any and all renewals, extensions or modifications of such mortgages, liens or encumbrances.

15. **TENANT'S HOLD OVER.** If Tenant remains in possession of the Premises with the consent of Landlord after the natural expiration of this Agreement, a new tenancy from month-to-month shall be created between Landlord and Tenant which shall be subject to all of the terms and conditions hereof except that rent shall then be due and owing at _2,950   Two Thousand nine hundred fifty_ DOLLARS ($ _2,950_ ) per month and except that such tenancy shall be terminable upon fifteen (15) days written notice served by either party.

16. **SURRENDER OF PREMISES.** Upon the expiration of the term hereof, Tenant shall surrender the Premises in as good a state and condition as they were at the commencement of this Agreement, reasonable use and wear and tear thereof and damages by the elements excepted.

17. No Pets.

18. **QUIET ENJOYMENT.** Tenant, upon payment of all of the sums referred to herein as being payable by Tenant and Tenant's performance of all Tenant's agreements contained herein and Tenant's observance of all rules and regulations, shall and may peacefully and quietly have, hold and enjoy said Premises for the term hereof.

19. **INDEMNIFICATION.** Landlord shall not be liable for any damage or injury of or to the Tenant, Tenant's family, guests, invitees, agents or employees or to any person entering the Premises or the building of which the Premises are a part or to goods or equipment, or in the structure or equipment of the structure of which the Premises are a part, and Tenant hereby agrees to indemnify, defend and hold Landlord harmless from any and all claims or assertions of every kind and nature.

20. **DEFAULT.** If Tenant fails to comply with any of the material provisions of this Agreement, other than the covenant to pay rent, or of any present rules and regulations or any that may be hereafter prescribed by Landlord, or materially fails to comply with any duties imposed on Tenant by statute, within seven (7) days after delivery of written notice by Landlord specifying the non-compliance and indicating the intention of Landlord to terminate the Lease by reason thereof, Landlord may terminate this Agreement. If Tenant fails to pay rent when due and the default continues for seven (7) days thereafter, Landlord may, at Landlord's option, declare the entire balance of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to Landlord at law or in equity or may immediately terminate this Agreement.

21. **LATE CHARGE.** In the event that any payment required to be paid by Tenant hereunder is not made within three (3) days of when due, Tenant shall pay to Landlord, in addition to such payment or other charges due hereunder, a "late fee" in the amount of _50  fifty_ DOLLARS ($ _50_ ).

22. **ABANDONMENT.** If at any time during the term of this Agreement Tenant abandons the Premises or any part thereof, Landlord may, at Landlord's option, obtain possession of the Premises in the manner provided by law, and without becoming liable to Tenant for damages or for any payment of any kind whatever. Landlord may, at Landlord's discretion, as agent for Tenant, relet the Premises, or any part thereof, for the whole or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting, and, at Landlord's option, hold Tenant liable for any difference between the rent that would have been payable under this Agreement during the balance of the unexpired term, if this Agreement had continued in force, and the net rent for such period realized by Landlord by means of such reletting. If Landlord's right of reentry is exercised following abandonment of the Premises by Tenant, then Landlord shall consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property in any manner Landlord shall deem proper and Landlord is hereby relieved of all liability for doing so.

23. **ATTORNEYS' FEES.** Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Premises, Tenant agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

24. **RECORDING OF AGREEMENT.** Tenant shall not record this Agreement on the Public Records of any public office. In the event that Tenant shall record this Agreement, this Agreement shall, at Landlord's option, terminate immediately and Landlord shall be entitled to all rights and remedies that it has at law or in equity.

25. **GOVERNING LAW.** This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of New York.

26. **SEVERABILITY.** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

27. **BINDING EFFECT.** The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

28. **DESCRIPTIVE HEADINGS.** The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant.

29. **CONSTRUCTION.** The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

30. **NON-WAIVER.** No indulgence, waiver, election or non-election by Landlord under this Agreement shall affect Tenant's duties and liabilities hereunder.

31. **MODIFICATION.** The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

32. **NOTICE.** Any notice required or permitted under this Lease or under state law shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to:

_____Salem Blake (Bros Inc)_____
[Landlord's]

_____8421 Chapin PKWY_____
_____Queens NY 11432_____
[Landlord's Address]

If to Tenant to:

_____Ira Heaston_____
[Tenant's]

_____8421 Chapin PKWY_____
_____Queens NY 11432_____
[Tenant's Address]

_Name]_
_Salm BLAKE_
_MR. BLAKE_

_Name]_
_Ira Heaston_
_Ira M. Heaston_

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

33. **ADDITIONAL PROVISIONS; DISCLOSURES.**
_____Full Access To premises, no hazards_____
_____
_____
_____

[Landlord should note above any disclosures about the premises that may be required under Federal or New York law, such as known lead-based paint hazards in the Premises. The Landlord should also disclose any flood hazards.]

As to Landlord this __15__ day of __January__, 20 _1_.

LANDLORD:

Sign: _____   Print: __Salim Blake__   Date: __1/16/19__

As to Tenant, this __15__ day of __january__, 20 _1_.

TENANT ("Tenant"):

Sign: _____   Print: __Ira Heaston__   Date: __1/16/19__

LESLIE PATTERSON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PA6366527
Qualified in Queens County

28. **DESCRIPTIVE HEADINGS.** The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant.

29. **CONSTRUCTION.** The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

30. **NON-WAIVER.** No indulgence, waiver, election or non-election by Landlord under this Agreement shall affect Tenant's duties and liabilities hereunder.

31. **MODIFICATION.** The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

32. **NOTICE.** Any notice required or permitted under this Lease or under state law shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to:

Salem Blake (B.as Inc)
[Landlord's

8421 Chapin PKWY
Queens NY 11432
[Landlord's Address]

Name]
SAlm BLAKE
MR. BLAKE
Roos Inc

If to Tenant to:

Ira Heaston
[Tenant's

8421 Chapin PKWY
Queens NY 11432
[Tenant's Address]

Name]
Ira Heaston
Ira M. Heaston

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

33. **ADDITIONAL PROVISIONS; DISCLOSURES.**
Fair Access To premises, No hazards.

[Landlord should note above any disclosures about the premises that may be required under Federal or New York law, such as known lead-based paint hazards in the Premises. The Landlord should also disclose any flood hazards.]

As to Landlord this  15  day of  January  , 20 19 .

LANDLORD:

Sign: _____   Print: Salm Blake   Date: 1/16/19

As to Tenant, this  15  day of  January  , 20 19 .

TENANT ("Tenant"):

Sign: _____   Print: Ira Heaston   Date: 1/16/19

LESLIE PATTERSON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PA6366627
Qualified in Queens County
My Commission Expires 10-30-2021

they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant.

29. **CONSTRUCTION.** The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

30. **NON-WAIVER.** No indulgence, waiver, election or non-election by Landlord under this Agreement shall affect Tenant's duties and liabilities hereunder.

31. **MODIFICATION.** The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

32. **NOTICE.** Any notice required or permitted under this Lease or under state law shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to:

*Salim Blake (Bros Inc)*
[Landlord's]

*8421 Chapin PKWY*
*Queens NY 11432*
[Landlord's Address]

Name]
*Salim BLAKE*
*MR. BLAKE*

If to Tenant to:

*Ira Heaston*
[Tenant's]

*8421 Chapin PKWY*
*Queens NY 11435*
[Tenant's Address]

Name]
*Ira Heaston*
*Ira M. Heaston*

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

33. **ADDITIONAL PROVISIONS; DISCLOSURES.**
    *Full access to premises, no hazards.*

[Landlord should note above any disclosures about the premises that may be required under Federal or New York law, such as known lead-based paint hazards in the Premises. The Landlord should also disclose any flood hazards.]

As to Landlord this _15_ day of _January_ , 20_19_ .

LANDLORD:

Sign: _____ Print: _Salim Blake_ Date: _1/16/19_

As to Tenant, this _15_ day of _january_ , 20_19_ .

TENANT ("Tenant"):

Sign: _____ Print: _Ira Heaston_ Date: _1/16/19_

LESLIE PATTERSON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PA6366537
Qualified in Queens County
My Commission Expires 10-30-2021
_1/16/19_

Civil Court of the City of New York

County of _____Queens_____

Part ___B___

Ira Haston

Claimant(s)/Plaintiff(s)/Petitioner(s)

*against*

Boris Inc.

Defendant(s)/Respondent(s)

Index Number ___057989 / 19___

Motion Cal. # _____ Motion Seq. # _____

## DECISION/ORDER

Recitation, as required by CPLR §2219 (a), of the papers considered in the review of this Motion:

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavits Annexed......... | |
| Order to Show Cause and Affidavits Annexed..... | |
| Answering Affidavits ............................. | |
| Replying Affidavits................................ | |
| Exhibits ........................................... | |
| Other............................................... | |

3:28pm ..

Upon the foregoing cited papers, the Decision/Order on this Motion to _____ is as follows:

Petitioner alleges respondent-landlord illegally and without court process locked him out of the 2nd floor apartment at 8421 Chapin Parkway Jamaica Hills, New York and seeks to be restored to possession and recover his property. Petitioner has proved proper and timely personal service upon respondent Boris Inc / Mrs. Blake, who has failed to appear today. As a result, an inquest hearing was held. At inquest, petitioner proved that he took occupancy of the subject apartment pursuant to a lease agreement between Boris Inc / Salim Blake / Mr. Blake commencing January 15, 2019 for 2 years at a monthly rent of $ 2,650. Petitioner also proffers original rent receipts dated 1/16/19 for $4,650 (1/16/19 - 2/16/19 - for first month's rent and security deposit), dated 2/14/19 for $2,650 (2/15/19 -

___4 | 9 | 19___
Date

Judge, Civil Court

LYDIA C. LAI
JUDGE, HOUSING COURT

CIV-GP-13 (Revised September 1999)

Civil Court of the City of New York

County of _____Queens_____
Part    B

Index Number _____057989/19_____
Motion Cal. # _____ Motion Seq. # _____

bre Heaston

Claimant(s)/Plaintiff(s)/Petitioner(s)
*against*

Boris, Inc.

Defendant(s)/Respondent(s)

### DECISION/ORDER

Recitation, as required by CPLR §2219 (a), of the papers
considered in the review of this Motion:

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavits Annexed......... | _____ |
| Order to Show Cause and Affidavits Annexed..... | _____ |
| Answering Affidavits ............................... | _____ |
| Replying Affidavits................................ | _____ |
| Exhibits ............................................ | _____ |
| Other................................................ | _____ |

Upon the foregoing cited papers, the Decision/Order on this Motion to_____

3/15/19 ) Signed by Boris Inc c/o Mrs. Blake, and is as follows:
dated 3/14/19 for #2,650 (3/15/19 - 4/15/19) also
syned by Boris Inc c/o Mrs Blake.[1]

Petitioner credibly testified that when he came
home on April 4, 2019, he found that the locks to
the premises had been changed. He testified that he
along with his wife and children have been locked out
without clothes, medicines and epi-pens for the
child. fancy

Based on the testimony and documentary evidence
presented by petitioner at inquest, the court finds the
petitioner has been illegally locked out of the apartment
by respondent without court process and is entitled to be
restored to possession immediately + to obtain his possessin

4/9/19
Date

Judge, Civil Court   LYDIA C. LAI
                     JUDGE, HOUSING COURT
                     P 2 of 4

[1] Petitioner also credibly testified that Mr. Blake and Mrs Blake
are husband + wife and are Boris, Inc.

CIV-GP-83 (Revised September, 1999)

Civil Court of the City of New York

County of _Queens_

Part B

Ira Heastor

Claimant(s)/Plaintiff(s)/Petitioner(s)

*against*

Daris Inc

Defendant(s)/Respondent(s)

Index Number __057989/19__

Motion Cal. # _____  Motion Seq. # _____

**DECISION/ORDER**

Recitation, as required by CPLR §2219 (a), of the papers considered in the review of this Motion:

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavits Annexed......... | _____ |
| Order to Show Cause and Affidavits Annexed..... | _____ |
| Answering Affidavits .............................. | _____ |
| Replying Affidavits................................. | _____ |
| Exhibits ............................................ | _____ |
| Other................................................. | _____ |

Upon the foregoing cited papers, the Decision/Order on this Motion to _____

The court orders Bons Inc /c/o Salm Blabe / is as follows: Mr. Blabe/Mrs. Blabe to immediately restore petitioner Ira Heastor to possession of his 2nd Floor apartment @ 8421 Chapin Parkway, Jamaica Hills, NY. If any of the petitioner's possessions have been removed, they are to be restored to the premises immediately.

Petitioner may seek the assistance of the NYC Police Dept in regaining possession of his apartment and possessions, if necessary. The NYC Police Department may assist by any reasonable means including changing the locks or otherwise opening the door. Petitioner may also retain the services of a locksmith to gain access if necessary. Accordingly, petitioner is granted a final judgment of possession. The warrant may issue & execute forthwith. Petitioner shall serve a copy of this order on respondents in person or by 1st class mail with certificate of mailing on or before 4/9/19.

_4 / 9 / 19_
Date

Judge, Civil Court
**LYDIA C. LAI**
JUDGE, HOUSING COURT

P 3 of 3

1] This decision and order does not supercede any pending Orders of Protection

Misc. 01(20) (Rev. 0/00)

# CENTRAL BOOKING

## PRISONER'S PROPERTY FORM

PRISONER'S NAME _____  ARREST # _____  DATE _____  PCT. _____

FUNDS COUNTED AND RETURNED (include total value of coins).  $ _____

THE BELOW LISTED ITEMS WERE REMOVED FROM PRISONER FOR RETURN TO PRISONER AT COURT OR ON RELEASE ON D.A.T.

### PROPERTY - DESCRIBE

☐ SHOE LACES  ☐ HAIR PICK/ COMB  ☐ PEN  ☐ LIGHTER  ☐ HANDBAG  ☐ BELTS  ☐ KEYS  ☐ NAIL CLIPPER

☐ OTHER (DESCRIBE) _____

_____

_____

(Signature - Arresting Officer) _____

(Signature - Prisoner) _____

(Member searching if other than A.O.)

(Reviewing Officer) _____  (Shield) _____  (Command) _____

NOTE: If no funds counted and returned, indicate "NONE". If no property removed and safeguarded, indicate "NONE".

Distribution - Original to C.B. - Duplicate to prisoner - Triplicate to Court Package

## RECEIPT

No. 00170846

DATE 1/16/19

$4,650.00

FROM Elna Heaston

four thousand six hundred & fifty 00/100 ———— DOLLARS

FOR first month rent & security deposit
(8421 Chapin Pkwy)

ACCT.# 4650 00   FROM 1/16/19   TO 2/16/19

☑ CASH
☐ CHECK        PAID $4,650 00
☐ MONEY ORDER  DUE    0   0    BY Boris Inc. Care of Salin
☐ CREDIT CARD

---

**UNITED STATES POSTAL SERVICE**   Certificate Of Mailing

This Certificate of Mailing provides evidence that mail has been presented to USPS for mailing.
This form may be used for domestic and international mail.

From: IRA HEASTON & FAMILY
8421 CHAPIN PKWY 2nd Fl.
JAMAICA Hills, NY 11432

To: BORIS Inc
8421 CHAPIN PKWY
Jamaica Hills, NY 11432

PS Form 3817, April 2007 PSN 7530-02-000-9065

U.S. POSTAGE PAID
JAMAICA, NY
11432
APR 09 19
AMOUNT
$1.45
R2304H109007-04

**RECEIPT**

No. 00170857

DATE 3/14/19

FROM Elsa Heaston

$2,650.00

Two thousand six hundred & fifty 00/100 — DOLLARS

FOR rent

☑ CASH
☐ CHECK
☐ MONEY ORDER
☐ CREDIT CARD

ACCT. $2650 00
PAID $2,650 00
DUE 0 0

FROM 3/15/19   TO 4/15/19

BY Boris Elsa C/o Mrs. Blake

---

**RECEIPT**

No. 00170852

DATE 2/14/19

FROM Elsa Heaston

$2,650.00

Two thousand six hundred & fifty 00/100 — DOLLARS

FOR rent

☑ CASH
☐ CHECK
☐ MONEY ORDER
☐ CREDIT CARD

ACCT. $2650 00
PAID $2650 00
DUE 0 0

FROM 2/15/19   TO 3/15/19

BY Boris Elsa C/o Mrs. Blake