# PAWAR LAW GROUP P.C.

## ATTORNEYS AT LAW

20 VESEY STREET SUITE 1410
NEW YORK NEW YORK 10007

**Robert Blossner**

**Vik Pawar**

TEL (212) 571 0805
FAX (212) 571 0938
www.pawarlaw.nyc

November 10, 2020

**BY ECF**
The Honorable Pamela K. Chen
United States District Judge

Re:    *Ira Heaston v. The City of New York, et al.*, 19 CV 5569 (PKC) (VMS)

Dear Judge Chen:

      Thank you for permitting me to present my side of the story in light of City's counsel defamatory comments and accusing me of criminal activity. A lawyer's intergrity and reputation is everything.

**INTRODUCTION**:

1.      I was called as a witness by Mr. Raju Sundaran[1] ("Sundaran") to present what I was led to believe was the City's case against Mr. Ira Heaston ("Heaston"). Bizarelly, Sundaran sought to impeach and attempted to demean my integrity even though I was responding to his queries in a non-hostile manner.

2.      After graduating from Seton Hall University Law School, I clerked for judges at the trial and appellate levels in New Jersey. I started my current firm in or about 2011. I have practiced in many of these United States after having been requested to by local practitioners and firms across the country. I have been invited to speak on national television and to the Practicing Law Institute. For the last twenty years, I am most proud to have worked with and assisted Professor Martin A. Schwartz on his various treatises on 42 U.S.C. §1983 ("§1983") litigation.

---

[1] Mr. Sundarun is a senior trial attorney with supervisory duties.

1

3.      I do not advertise. I do not solicit clients. The majority of my cases come from referrals from members of the bar across the country, as well as prior clients and their family and friends. Mr. Ira Heaston's ("Heaston") case was referred to me by another member of the New York State Bar ("NYS"). The attorney's name is not Rosenberg, Rosenblatt or Blossner as suggested in the transcript. The name is not relevant. What I believe is relevant is that a practicing attorney thought enough of my reputation and skills to personally bring Heaston to my office. As an active practitioner himself, the attorney thought I would be an ideal fit for the unfortunate set of facts and circumstances that Heaston had presented.

4.      The vast majority of my civil rights clients are indigent and cannot afford to pay me a retainer. A majority of these clients also happen to be of low socio-economic background and are minorities. These cases are handled on a contingency basis with the possibility of fee recovery under 42 U.S.C. §1988.

5.      Quite frankly, I take offense that Sundaran, a career civil rights defense lawyer, should suggest to me how to run a plaintiff's civil rights practice.

**PRE-LITIGATION EVENTS**

6.      When Heaston appeared with referring counsel at my office, he presented to me with rent and deposit receipts, a two-year lease, a Housing Court Order and a list of items that he claimed were stolen from his rental property and a video of his arrest. Heaston claimed to have been falsely arrested after he called 911 to assist him because his leased apartment was burglarized. He stated that he had been pushed around and handcuffed causing him to suffer physical as well as psychological injuries. *See Exhibit VP1*.[2]

7.      As a result, I prepared a Notice of Claim ("NOC") which was reviewed as well as signed by Heaston. The NOC has to be over inclusive and include any possible claims/injuries/damage/amount. This is necessary because the City lawyers at every 50h hearing explicitly admonish claimants, such as Heaston, that the NOC cannot be orally amended at the hearing.

8.      It should be noted that eventually, the complaint filed in federal court did not include any of the physical injuries noticed on the NOC even though Heaston swore at his 50h hearing that he suffered physical injuries to his legs, arms and wrists. The only injuries claimed were emotional in the final second amended complaint. The earlier complaints included injuries ranging from trauma, shock, humiliation, embarrassment. By the time that the federal court complaints were drafted, it had become clear that there were no physical injuries as had originally been contemplated in the NOC.

---

[2] For sake of brevity, I am only attaching exhibits that are not in record already.

2

## **LAWSUIT**

9.         Based on facts and information provided by Heaston a complaint was drafted. The complaint was amended to include individual defendants, remove certain claims and parties who were no longer part of the case.

10.        I rarely allow a client to review a §1983 complaint because it is legal document and most clients do not understand the nuances of §1983.

11.        The facts and information in the body of the complaint came directly from Heaston and the documents that he provided.

12.        Sometime in late spring 2020, Sundaran spoke with me about "new developments" in the case and requested that I consider withdrawing the case. He alluded to a family member. He did not provide any documentation or photographs at that time. Frankly, due to prior dealings with Sundarun I discounted what he said, especially in view of the text messages that Heaston shared with me documenting the family member mocking him about the federal lawsuit. *See Exhibit VP2.*

13.        In addition, prior to the private defendants' retention of counsel, its managing agent contacted my office and informed me that squatters run a scam on a regular basis and rent out premises that do not belong to them. This led me to believe that it was possible that Heaston had been the victim of a similar scam which according to the agent was not uncommon. That in fact was one of the reasons that the private defendant's attorney made a business decision and offered a settlement. The settlement was reached in good-faith before any fraud was discovered.[3]

14.        It is unclear why Sundaran waited until August 3, 2020 to share the photographs which he apparently had in his possession in the Spring. Perhaps he had chosen to set a trap for Heaston and me. Certainly, had Sundaran shared the photographs sooner, I would have confronted Heaston about them earlier than August 3, 2020.

---

[3] The fact that the landlord had filed a motion to vacate the entry of default from the Housing Court was of no moment. That document contained another lease which was directly in conflict with the lease provided by Heaston. One cannot take an adversary's word over a client's word when they are in dispute. Landlords routinely file opposite documents when faced with an unlawful eviction case.

3

## MY WITHDRAWAL FROM THE CASE

15.     As the Court can see from *Exhibit VP3*, although Heaston did request that I dismiss the action while I was in midst of drafting the motion to withdraw, his text messages voiced a concern that he was being mistreated and that the deck was essentially stacked against him.

16.     With the conflicting concerns that Heaston had, I not only did not think it was prudent for me to continue as his counsel, but under the circumstances it would have been wrong for me to advise him after I had told him that I wished to withdraw. I did the best that I could and informed him that he should contact another lawyer or if he wished to contact the Court to dismiss it himself.

17.     Sundaran had made it abundantly clear that in his mind, dismissing the action would not have stopped his crusade for Rule 11 sanctions against Heaston and myself.

## BAD-FAITH

18.     Sundaran seeks sanctions because he claims that the action was brought in bad-faith. Not so.

19.     The facts as alleged in the lawsuit were not picked out of thin air. They came from Heaston and the documentation which included what was then a lawfully obtained Housing Court Order.

20.     The city lawyer suggests that I should have put more credit into the lease submitted by the landlord (after all the parties had joined the federal case) instead of the lease that Heaston presented to me. That assertion is ludicrous. Equally nonsensical is the suggestion that doing an indepth search into ACRIS and DOB records would have shown that Heaston was being deceptive. None of those searches would have revealed anything substantive to the nature of the fraud perpetrated by Heaston.

21.     If Sundaran were not so goal oriented, and I were not in his sights, he might have taken the time to know what he was suggesting was nonsense. ACRIS and DOB searches would have revealed lot, block, tax and mortgages as well as ownership, certificates of occupancy and violations, but not leases, security deposit and rent receipts or that such were fraudulent.

22.     The City lawyers cannot demand that a plaintiff's lawyer be held to a higher standard than the Housing Court Judge who issued the Order granting Heaston re-entry. Heaston fooled the court and persuaded it to issue that Order. In turn, I was duped into taking on a civil rights matter and doing a lot of work on a contingency basis.

4

23.     The Housing Court Judge was duped into granting that order. I was presented with the same documentation as the Housing Court prior to my being asked to take on the case. In addition to what the Court had before it, I was presented with the the Court's Order. I had no reason to doubt the authenticity or validity of the Order.

24.     Unlike the defamatory language of the City lawyer's claims that what I did was extortion, it was anything but. Had I wanted to "extort" money from the private defendants, I would have simply moved for an entry of default instead of giving the private defendants an extension of time to file an answer and counseled them to retain the services of an attorney. As an example of his over reaching, Sundaran has taken on an unrequested role of obtaining funds back, for an entity he does not represent, from a settlement when the private defendants' lawyer has made no such request.[4]

25.     "Rule 11 sanctions are an extreme remedy, such that 'when divining the point at which an argument turns from merely losing to losing *and* sanctionable . . . district courts [must] resolve all doubts in favor of the signer.'" *United States Fire Ins. Co.* v. *United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 455 (S.D.N.Y. 2004). Courts determine whether a Rule 11 violation has occurred by "focusing on the situation existing when the paper was signed. . . . The Court must not allow hindsight to skew its judgment." *E.g. Rubio* v. *City of New York*, 2005 U.S. Dist. LEXIS 40163, No. 03-CV-1349, 2005 WL 1498283 at *1 (E.D.N.Y. May 31, 2005).

26.     The Notes of Advisory Committee on Rules – 1983 Amendment state that the "court is expected **to avoid using the wisdom of hindsight** and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; **whether he had to rely on a client for information as to the facts** underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was **based on a plausible view of the law**; or whether **he depended on forwarding counsel or another member of the bar**." (emphasis added).

---

[4] Rule 11 Notes of Advisory Committee on Rules – 1993 Amendment caution that "Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable."

5

## CONCLUSION

27.     I would be remiss if I did not point out one fact for the Court. I have dealt with counsel from all over our country and from other countries, I have been picked as local counsel and have been admitted as *pro hac vice* counsel in courts across this land. In none of the hundreds of cases I have been involved in, has any adversary moved for sanctions against me or sought to refer me to the disciplinary committee, *except one attorney*, Sundaran. Out of the hundreds of cases, sanctions have been requested in three of them (including this one). In all these three cases Sundaran was involved. His fixation with seeking sanctions against me is, frankly, eerie.[5]

28.     Whether it is of his own volition or a concerted effort by the NYC Law Dept to chill an attorney's right to fight for civil rights cases, this Court should not endorse that approach. In fact, the Court should rebuke such conduct and send a message to either Sundaran or the Law Dept that filing baseless Rule 11 sanctions against an adversary is frowned upon because my conduct was ethical and comported with my professional responsibilities.

29.     Heaston bamboozled everyone *including* me.

        I thank the Court and am available if there are any further questions or requests.

Respectfully,

Vik Pawar (VP9101)

Cc:     All counsel (by ECF)

---

[5] "Beware of all those in whom the urge to punish is strong." - *Friedrich Nietzsche*