UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IRA HEASTON,

                      Plaintiff,

                                                                            19 CV 5569 (PKC) (VMS)

    -against-

THE CITY OF NEW YORK, ET AL.,

                      Defendants.
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOVANT VIK PAWAR'S MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 20, 2022 DECISION**

Vik Pawar (VP9101)
20 Vesey Street, Suite 1410
New York, New York 10007
212 571 0805 (phone)
212 571 0938 (fax)
www.pawarlaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………….

I.      PERTINENT PROCEDURAL HISTORY ………………………..    1

II.      STANDARD OF REVIEW………………………………………….    4

III.      ARGUMENT……………………………………………………………    5

     I.    **The Court overlooked the City attorneys' failure to comply with Rule 11**    5

         A. Requirements of Rule 11    5

         B. The Movant was not in a position to cure the pleading    7

     II.    **The Court overlooked the false facts submitted by the City attorneys**    9

     III.    **The Movant was not afforded Due Process**.    11

IV.      CONCLUSION……………………………………………………………    14

# TABLE OF AUTHORITIES

**Cases**     **Page**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52, 58 (2d Cir.2000)………………………………………………….. 5

*Barber v. Miller*,
146 F.3d 707, 710-11 (9th Cir. 1998)………………………………………… 7

*Calloway v. Marvel Entertainment Group*,
854 F.2d 1452, 1479 (2d Cir. 1988)………………………………………….. 11

*Castro v. Mitchell*,
727 F. Supp. 2d 302, 307-08 (S.D.N.Y. 2010)…………………….…………… 6

*Chambers v. NASCO*,
501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)….................................. 13

*Daliessio v. DePuy, Inc.*,
178 F.R.D. 451, 452 (E.D. Pa. 1998)………………………………………… 7

*Donaldson v. Clark*,
819 F.2d 1551, 1559-60 (11th Cir. 1987) (*en banc*)…………………………….. 13

*Dalton v. Fleming*,
2008 U.S. Dist. LEXIS 81979 (S.D. Ala. Oct. 14, 2008)…………………………… 6

*DeShiro v. Branch*,
183 F.R.D. 281, 287-88 (M.D. Fla. 1998)……………………………………… 7

*Ed Capital LLC v. Bloomfield Inv. Res. Corp.*,
316 F.R.D. (SDNY 2016)………………………………………………………….. 5

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
307 F.3d 501, 510-11 (6th Cir. 2002)…………………………………………… 6

*Gal v. Viacom Int'l, Inc.*,
403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005)............................................................. 7

*Hadges v. Yonkers Racing Corp.*,
48 F.3d 1320 (2d Cir. 1995)..................................................................................... 6

*Homkow v. Musika Records, Inc.*,
2009 U.S. Dist. LEXIS 21537 (S.D.N.Y 2009)....................................................... 8

*Int'l Techs. Mktg. v. Verint Sys. Ltd.*,
2019 U.S. Dist. LEXIS 43839 (SDNY 2019)......................................................... 7

*Intravaia v. Rocky Point Union Free Sch. Dist.*,
2014 U.S. Dist. LEXIS 176235, 2014 WL 7338849 (E.D.N.Y. 2014).................. 6

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
729 F.3d 99, 104 (2d Cir. 2013).............................................................................. 4

*Langdon v. Cnty. of Columbia*,
321 F. Supp. 2d 481, 485 (N.D.N.Y. 2004)............................................................ 8

*Lindner v. American Exp. Corp.*,
2009 U.S. Dist. LEXIS 970, 2009 WL 54493, at 2
(S.D.N.Y. Jan. 8, 2009)........................................................................................... 6

*Oliveri v. Thompson*,
803 F.2d 1265, 1275 (2d Cir. 1986)........................................................................ 5

*Olson v. AT & T Corp.*,
2008 U.S. Dist. LEXIS 61610, 2008 WL 2967167, at *1
(D. Kan. July 31, 2008)........................................................................................... 6

*Pavelic & LeFlore v. Marvel Entertainment Group*,
493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989)....................................... 11

*Ridder v. City of Springfield*,
109 F.3d 288, 295-97 (6th Cir. 1997)..................................................................... 8

*Rojas v. Theobald*,
2007 U.S. Dist. LEXIS 62321, 2007 WL 2455133, at *9-10 (E.D.N.Y. 2007).... 8

*Rubio v. City of New York*,
2005 U.S. Dist. LEXIS 40163 (E.D.N.Y. May 31, 2005)..................................... 11

*Sakon v. Andreo*,
119 F.3d 109, 114 (2d Cir. 1997)........................................................................................... 13

*Schlaifer Nance & Co. v. Estate of Warhol*,
194 F.3d 323, 334 (2d Cir. 1999)........................................................................................... 11

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255, 257 (2d Cir. 1995)............................................................................................. 4

*Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce*,
682 F.3d 170 (2d. Cir. 2012).................................................................................................. 6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245, 1255 (2d Cir. 1992)....................................................................................... 4

*Wilson v. Citigroup, N.A.*,
702 F.3d 720, 725 (2d Cir. 2012)........................................................................................... 11

## Federal Rules of Civil Procedure

Rule 11 ............................................................................................................................ passim

## Secondary Authorities

*18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper*,
Federal Practice & Procedure § 4478 at 790 (2d ed.)............................................................ 4

## PERTINENT PROCEDURAL HISTORY

On October 2, 2019, the Movant commenced, on behalf of plaintiff Ira Heaston ("Heaston") an action against defendant City, Doe defendants and certain private defendants.[1]

On October 9, 2019, the Movant filed a First Amended Complaint.

The City defendants were represented by Mr. Raju Sundaran, Esq. and Ms. Soo-Young Shin, Esq. (upon information and belief Ms. Shin was under Mr. Sundaran's supervision and Movant has no reason to believe that she acted alone or without the explicit approval and under direction of Mr. Sundaran – however, they will be referred to as "City attorneys").

On January 10, 2020, the Court held a pre-motion conference at which time certain of the claims were disposed of and the Court allowed Movant to file a Second Amended Complaint ("SAC").

On March 9, 2020, the Movant filed a SAC.[2]

---

[1] The case was referred to the Movant by Mr. Daniel Crupain, Esq., an attorney licensed to practice for over 55 years and who volunteered to submit an affirmation in support of the Movant's motion to reconsider. Exhibit A.

[2] The Court noted in its Decision that the Movant "double downed" by filing the SAC. However, the SAC was filed in accordance with the Court's Order on January 10, 2020. The SAC removed certain causes of action, removed the private defendant who by that time had settled the claims against it and substituted the true names of the Doe defendants that had been disclosed by the City attorneys. It was the prudent step to take. The SAC included the Housing Court Judge's Order and the Criminal Court Certificate of Dismissal (at the time, Movant verily believed that there was a presumption of regularity as to both these Court documents). The words "double downed" (Decision at p. 14) implies that the Movant was complicit in the eventual fraud perpetrated by Heaston. As the Court noted, Movant did not participate in the fraud. These documents were presumed to be regulatory in nature.

In **May 2020**, or as early as **December 2019**, Ms. Margaret Kirkland (Ms. Kirkland") shared information with the City attorneys.[3]

On July 1 and 2, 2020, the City attorneys filed an answer on behalf of all City defendants.

On or about **July 9, 2020**, the City attorneys spoke with the Movant and stated that they had in their possession name of an individual who had provided them with documents and key information about Heaston.[4]

On **July 13, 2020**, City attorneys disclosed Ms. Kirkland's but did not provide any documentation, or any key information, or any phone number or email that Ms. Kirkland used to communicate with the City attorneys.[5]

On **July 13, 2020**, and ensuing days, Movant made repeated and unsuccessful requests for documentation and information that the City attorneys claimed Ms. Kirkland had disclosed to them.[6]

On **July 17, 2020**, City attorneys filed an application for a "Hearing" suggesting that a fraud had been perpetrated on the Court. On the same day, the Movant not having the documentation and information alluded to but not disclosed by the City attorneys filed an opposition in response to the City's application.

On July 20, 2020, the Court granted the City attorney's application for a "Rule 11 motion for sanctions" and directed that the motion to be served on Plaintiff by August 10, 2020, and to **allow the Plaintiff** 21 days to cure the offending pleading.

---

[3] According to Ms. Kirkland, she first emailed the City attorneys in December 2019, and replied back to their emails in May 2020. It remains unclear when the City attorneys actually came in possession of the key documents and information as noted later in this memorandum. Exhibit B.

[4] The City attorneys, as noted in Exhibit D, prodded Movant to serve formal discovery requests and refused to supplement their mandatory disclosures under Rule 26.

[5] Exhibit C.

[6] Exhibit D.

2

On **August 3, 2020**, City attorneys served additional discovery on the Movant.[7]

On **August 6, 2020**, after confronting Heaston, and several discussions with ethics counsel, and his partner, Robert Blossner, Movant filed a motion to withdraw as counsel. On the same day, the Court granted Movant's motion to withdraw and did "not require [Movant] to submit an affidavit." The Court directed the Movant to serve all motion papers on Heaston and Movant complied.

On August 21, 2020, Heaston retained new counsel and the Court directed the City attorneys and Heaston's new counsel to "file a stipulation of dismissal by September 14, 2020, and also directed Plaintiff to file his "response to [City] defendant's Rule 11 motion for sanctions" by the same date. The Court also directed City attorneys to provide a witness list for the Hearing.

On September 30, 2020, since the Movant was listed as a witness for the Hearing, the City attorneys issued a subpoena to Movant demanding his presence at the Hearing as a witness.

On October 5, 2020, the Court held the Hearing, the Movant was called as a witness and was not allowed to participate in the Hearing or question any witnesses nor was Movant privy to the testimonies.

On October 27, 2020, the Court directed the Movant to submit text messages between him and Heaston and to submit "supplemental submissions by November 10, 2020."

On November 10, 2020, the Movant complied by submitting his version without knowing he was the target of sanctions as he had been unable to question or hear testimony at the Hearing.

On January 20, 2022, the Court issued its Decision sanctioning the Movant under Rule 11.

This motion for reconsideration follows.

---

[7] <u>Exhibit E</u>.

## **STANDARD OF REVIEW**

The Second Circuit has held that the standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court **overlooked — matters**, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (emphasis added). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or **the need to correct a clear error or prevent manifest injustice.**'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (emphasis added) (*quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper*, Federal Practice & Procedure § 4478 at 790 (2d ed.)); *accord Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).

The Movant respectfully submits that the Court committed plain error because of (1) the City's failure to adhere to the strict requirements of Rule 11, (2) the City attorney's deliberate misconduct in withholding key documents and (3) Due Process not afforded to Movant.

## ARGUMENT

The Movant respectfully requests that the Court reconsider her decision because (1) the Court overlooked the fact that the strict requirements for Rule 11 sanctions were not complied with, (2) the Court overlooked and adopted some of the inaccurate facts advocated by the City attorneys, and (3) the Movant was not afforded Due Process.

### I. The Court overlooked the City attorneys' failure to comply with Rule 11

The Movant should not be sanctioned because the strict requirements of Rule 11 were not adhered to, rendering it impossible for Movant the "cure" opportunity.

A. Requirements of Rule 11

The necessity of a timely "safe harbor letter" is alive and adhered to in this court; however such "safe harbor letter" was not served upon Movant by the City attorneys. This is especially critical in that Your Honor did not find conspiratorial or purposeful conduct by the Movant but rather suggested that the Movant's investigatory practice was insufficient and Movant had ignored evidence.[8] The failure of an attorney to recognize the fraudulent activity of his client is exactly what the "safe harbor letter" is designed to allow the attorney an opportunity to "cure."

Under Rule 11, courts must "resolve all doubts in favor of the signer" of a paper challenged. *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986), *see also Ed Capital LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. (SDNY 2016) (the Court declined to apply Rule 11 sanctions based on [defendant's] failure to provide notice as required by Rule 11(c)); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir.2000) ("In disposing of a motion for Rule 11 sanctions, a district court must adhere to the procedural rules which safeguard due process rights."

---

[8] This issue is discussed in Part II.

5

The City attorneys, herein, failed to comply with the strict and mandatory requirements of the 21 days safe harbor provision. The 1993 amendment to Fed. R. Civ. P. 11 establishes a "safe harbor" of 21 days during which factual or legal contentions may be withdrawn or appropriately corrected to avoid sanctions. Fed. R. Civ. P. 11 (c)(1)(A); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510-11 (6th Cir. 2002) (compliance with the safe harbor provision is mandatory); *Lindner v. American Exp. Corp.*, 2009 U.S. Dist. LEXIS 970, 2009 WL 54493, at 2 (S.D.N.Y. Jan. 8, 2009) (the failure to comply with the safe harbor provision results in a denial of sanctions); *Dalton v. Fleming*, 2008 U.S. Dist. LEXIS 81979, 2008 WL 4571509, at *3 (S.D. Ala. Oct. 14, 2008) (the requirement is jurisdictional, was not waived, and the failure to comply with the safe harbor provision resulted in denial of the motion for sanctions); *Olson v. AT & T Corp.*, 2008 U.S. Dist. LEXIS 61610, 2008 WL 2967167, at *1 (D. Kan. July 31, 2008) (motion for sanctions denied for failure to comply with safe harbor provision). It is well-established that "[a]ny motion seeking Rule 11 sanctions that does not comply with [the safe harbor] provisions must be denied." *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-cv-642, 2014 U.S. Dist. LEXIS 176235, 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014); *see also Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory*, 682 F.3d 170, 175 (2d Cir. 2012) (holding that Rule 11's safe harbor provision "is a strict procedural requirement").

Letters or informal warnings are insufficient. *See Star Mark Mgmt., Inc.*, 682 F.3d at 175 (2d Cir. 2012) ("An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period."); *see also Castro v. Mitchell*, 727 F. Supp. 2d 302, 307-08 (S.D.N.Y. 2010) ("Courts have held that even a letter detailing the nature of the conduct which purportedly violates Rule 11 and threatening to file a motion for sanctions

6

cannot constitute notice under Rule 11."); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) ("[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock—the rule says nothing about the use of letters.").

The City attorney's failure to properly notice Movant with a procedurally correct safe harbor notice when considered in conjunction with the City's attorney's refusal to timely produce (despite multiple requests) documentation and information they had received from Ms. Kirkland was tantamount to preordained prevention of Movant's ability to cure.

Not only was the Movant not provided with a safe harbor notice during which time he would have had an adequate opportunity to withdraw the complaint, the Movant was unable to do so as noted in B below.

B. <u>The Movant was not in position to "cure" the pleading</u>

While the City attorneys cited to *Int'l Techs. Mktg. v. Verint Sys. Ltd.*, 2019 U.S. Dist. LEXIS 43839 (GHW) (2019), *aff'd in part* (2nd Cir. 2021)[9], for the proposition that an attorney can still be sanctioned after the attorney has withdrawn from the case. That case is easily distinguishable and inapplicable here. In *Int'l Techs. Mktg.*, the case was filed in March 2015, the attorney who was subject to sanctions was the *second* attorney on the case for the plaintiff and the Court had previously denied without prejudice motion to sanction the *second* attorney under its inherent powers. After a *third* attorney appeared in the case and significant discovery had taken place, the defendants served the *third* attorney with a safe harbor letter and then renewed its motion for sanctions after several years. While the Second Circuit did not address the issue of sanctions against the *second* attorney under its inherent powers (the defendants had dropped their sanction

---

[9] In the case, the Circuit did not address the issue of sanctioning attorneys after withdrawal but other decisions have and are cited here.

7

motion against the *second* attorney), the *third* attorney did receive a safe harbor letter. In the instant matter, the mandatory safe harbor letter was not provided to the Movant and the Court sanctioned Movant under Rule 11 and not under its inherent authority. The notice and opportunity to withdraw requirements of Rule 11(c)(2) were, therefore, clearly not satisfied here.

The Second Circuit has used language to suggest that a sanctions motion is untimely if first filed with the court after the opportunity to withdraw the offending pleading has elapsed. In *In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003), the Second Circuit noted that Rule 11 "functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *Id.* at 89 (listing cases and noting that "[t]he Advisory Committee on Civil Rules contemplated that Rule 11 motions would be deemed untimely if filed too late to permit correction or withdrawal"); *accord Homkow v. Musika Records, Inc.*, 2009 U.S. Dist. LEXIS 21537, 2009 WL 721732, at *20 (S.D.N.Y. Mar. 18, 2009) ("A party cannot bypass the safe-harbor requirement by submitting the motion at a point in the litigation in which it is no longer possible for the offending party to correct or retract the allegedly sanctionable statement." (listing cases)); *see also Barber v. Miller*, 146 F.3d 707, 710-11 (9th Cir. 1998); *Ridder v. City of Springfield*, 109 F.3d 288, 295-97 (6th Cir. 1997); *Langdon v. Cnty. of Columbia*, 321 F. Supp. 2d 481, 485 (N.D.N.Y. 2004); *Rojas v. Theobald*, 2007 U.S. Dist. LEXIS 62321, 2007 WL 2455133, at *9-10 (E.D.N.Y. Aug. 23, 2007); *DeShiro v. Branch*, 183 F.R.D. 281, 287-88 (M.D. Fla. 1998); *Daliessio v. DePuy, Inc.*, 178 F.R.D. 451, 452 (E.D. Pa. 1998). (noting attorney did not have opportunity to withdraw pleading).

Because the City failed to adhere to the strict requirements prior to seeking Rule 11 sanctions, the Movant respectfully requests that the Decision sanctioning Movant be vacated.

## II. The Court overlooked the false facts submitted by the City attorneys

Not only are the aforementioned adequate grounds for the Court to vacate the sanctions order against Movant, Your Honor **overlooked** some of the false facts advocated by the City attorneys at the Hearing and cited it in her Decision.

First, the Movant can only surmise that the City attorneys did not disclose to Your Honor that they refused to produce documentation or the information that Ms. Kirkland had given to them as early as December 2019. Instead, the City attorneys demanded that Movant serve formal discovery demands.[10] Based on what can only be presumed to be their inaccurate representations to the Court, (which Movant had not opportunity to question at the Hearing) Your Honor credited their submission without an opportunity for Movant to challenge *this* statement in the Decision "[t]hen, in May 2020, Pawar was again presented with more evidence of Plaintiff's deception and the falsity of his claims, this time in the form of Margaret Kirkland's detailed statements, as well as photos of Salim Blake and Plaintiff together." Decision at p. 15. This is simply not true. The documentation and information was not turned over until August 3, 2020, and the City attorneys **never** turned over any detailed statements of Ms. Kirkland to the Movant. The City attorneys have not bothered to correct this factual misrepresentation as is their obligation as officers of the Court.

As noted in Exhibit C, the City attorneys provided scant information about Ms. Kirkland and despite repeated requests (Exhibit D) failed to provide any documentation or information provided to them by Ms. Kirkland. The City attorneys failed to disclose information and photographs which had been in their possession **since December 2019 until August 3, 2020**. The City attorneys advocated and the Court adopted the false narrative that the Movant had the photographs in his possession as early as May 2020 but the fact remains the photographs were not

---

[10] Exhibit D.

9

turned over **until August 3, 2020**. Exhibit E. As soon as Movant received the photographs, Movant confronted Heaston and not being satisfied with the viability of the cause of action immediately moved to withdraw as counsel.

Furthermore, contrary to page 9 of the Decision, Movant did conduct an investigation. The Movant retained the services of an investigator, Edwin Velez who amongst other matters provided photographs of the residence in question and served the private defendants at the residence where service was accepted by an individual who presumably knew Mr. and Mrs. Blake and Boris.[11] Additionally, the Movant questioned Heaston about the circumstances surrounding his awareness of the vacancy and the money he paid for the lease.[12] It is respectfully submitted that had Movant been privy to the allegation of misfeasance and testimony of other witnesses, his investigatory efforts could have been disclosed to the Court in a satisfactory and timely fashion.

The Movant respectfully submits that an attorney's function is not to step into the shoes of his adversary and adopt their position. Rather an attorney's role is to represent the client zealously in the adversarial process and hope that the opposition does not mislead the Court or present false facts or fail to correct them prior to a sanction being imposed upon an attorney. The Movant would have spent time and efforts to challenge the misrepresentations had he be given the opportunity to do so as noted in Part III.

---

[11] Exhibit F.

[12] *Id.*

10

### III. The Movant was not afforded Due Process

The Movant was not afforded Due Process and could not challenge some of the factual or otherwise inaccurate facts presented to the Court at the Hearing.

In accordance with principles of Due Process and Rule 11 itself, the Second Circuit noted in *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 725 (2d Cir. 2012) that "an attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, an opportunity to be heard on that matter, must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges."[13] The Court herein found that Movant did not conduct an inquiry that was reasonable under the circumstances. A reading of the Decision would prohibit Movant from reliance upon the Order of a Housing Court Judge over an undecided motion to vacate it, and a Certificate of Dismissal by the Criminal Court, over the purported records of police officers. All without the opportunity of Movant to establish his investigation and reasoning. "The Court must not allow hindsight to skew its judgment." *E.g. Rubio v. City of New York*, 2005 U.S. Dist. LEXIS 40163 (E.D.N.Y. May 31, 2005). Due process requires that "courts provide notice and opportunity to be heard before imposing any kind of sanctions." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). Due Process would demand the Movant be apprised in advance (notice) that he faced penalty for not properly investigating.

---

[13] Assuming arguendo, the City attorneys now shift their position and suggest that the Rule 11 sanctions were part of the Court's initiative. First, that is factually inaccurate and besides this Court did not find bad-faith by the Movant. A Court initiated contempt proceedings *sua sponte* must find bad-faith and due process afforded. An attorney may not be found to have acted in bad faith when he or she has relied on a "client's statements as to factual claims when those statements are objectively reasonable." *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1479 (2d Cir. 1988), *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989). *See also* Exhibit A.

11

In the instant matter, the Court has sanctioned the Movant for not properly investigating the claims of his client but found that Movant was not a part or party to his client's fraud. The sanction was imposed after a hearing wherein the Movant was called as a witness but did not have an opportunity to listen, observe, examine, challenge testimony, call witnesses on his own behalf or present his side of the story. Had Movant been allowed to participate or have representation in the hearing as an attorney subject to sanctions, the Movant would have inquired into, among other items, the following areas:

1. If the private defendants' criminal complaints about Heaston been a burglar was so compelling, why did the highly skilled NYPD detectives who had a prior open complaint and a "wanted" poster of Heaston, fail to pursue and prosecute the burglary charges against Heaston after apprehending him;

2. Why did the Queens District Attorney's Office dismiss the case at arraignment? Was it because the NYPD had the wrong suspect or was it something else which let them to issue a Dismissal (which Movant relied upon) as a favorable termination of the proceedings for the false arrest claim.

3. How, when and how frequently did Ms., Kirkland speak with the City attorneys. When and what did Ms. Kirkland provide the City attorneys with the key information about a fake obituary, Heaston and Blake being childhood friends and their devious scheme to defraud?

4. When did the City attorneys become aware of the information from Ms. Kirkland and why did they insist that Movant serve formal discovery demands and refused to supplement their Rule 26 disclosures until August 3, 2020 and how long were they prolonging the case to the detriment of the Court and the Movant.

A court must comport with the mandates of Due Process when sanctioning lawyers for abusive litigation practices. *Chambers v. NASCO*, 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Donaldson v. Clark*, 819 F.2d 1551, 1559-60 (11th Cir. 1987) (*en banc*) ("Due Process requires that the attorney ... has fair notice of the possible imposition of Rule 11 sanctions and of the reasons for their imposition," as well as "an opportunity to respond, orally or in writing as may be appropriate. . . ."). This means that the attorney facing possible sanctions must receive specific notice of (1) "the conduct alleged to be sanctionable"; (2) "the standard by which that conduct will be assessed"; and (3) "the authority under which sanctions are being considered," and must be given "an opportunity to be heard on that matter . . . to [allow Movant] to defend against specific charges." *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997).

Again, Movant is not attempting to excuse the fraud perpetrated by the plaintiff on the Court and all the parties. But at what point did Movant engage in sanctionable conduct? The pleading had a chance for success until Movant discovered the fraud perpetrated by Heaston.

## CONCLUSION

In conclusion, the Movant asks her Honor to put herself in Movant's shoes. Movant is a civil rights attorney whose works on cases primarily involving 42 U.S.C. 1983 and representing the disenfranchised members of society. Movant lost time and money in this action. Movant acted in good faith. All parties concede that not only did Movant's client provide him with false and fraudulently obtained documentation, but first, similarly deceived the Housing and Criminal Courts as well as the experienced attorney who had referred Movant to represent him. Movant's conduct is not sanctionable under the strict procedures outlined in Rule 11 and nor is it sanctionable when the opposing counsel failed to apprise the Court of facts that were not accurate. Movant respectfully requests that the sanctions order against him is improper under the circumstances described herein and hopes that the Court in its infinite wisdom reconsiders the Decision and vacates the sanctions against Movant.

Dated: February 18, 2022
       New York, New York 10007

Respectfully,

/s
Vik Pawar (VP9101)

14