19-CV-5569 (PKC) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IRA HEASTON,

Plaintiff,

-against-

THE CITY OF NEW YORK, P.O. JOSEPH ESSIG,
DET. RAMON PORTILLO, P.O. AMANDA
LORBER f/k/a AMANDA MUROLO,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOVANT VIK PAWAR'S FEBRUARY 18, 2022 MOTION FOR RECONSIDERATION

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Joseph Essig,*
*Ramon Portillo, and Amanda Lorber f/k/a*
*Amanda Murolo*

*100 Church Street*
*New York, New York 10007*

*Of Counsel:  Soo-Young Shin*
*Tel:       (212) 356-2329*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................................... ii

STATEMENT OF FACTS ............................................................................................................. 1

STANDARD OF LAW................................................................................................................... 9

ARGUMENT ................................................................................................................................ 10

  POINT I

    MOVANT'S NEW ARGUMENTS ARE IMPROPER FOR A MOTION FOR

    RECONSIDERATION ....................................................................................... 10

  POINT II

    MOVANT WAS ON NOTICE OF DEFENDANTS' INTENT TO MOVE FOR

    SANCTIONS AND WAS AFFORDED THE OPPORTUNITY TO WITHDRAW THE

    COMPLAINT, BUT INSTEAD CHOSE TO WITHDRAW AS PLAINTIFF'S

    ATTORNEY DAYS BEFORE SERVICE OF THE RULE 11 MOTION ........................... 12

  POINT III

    DEFENDANTS DID NOT IMPROPERLY WITHHOLD DISCOVERY AND

    DEFENDANTS DID NOT ADVOCATE FALSE FACTS .................................................. 17

  POINT IV

    MOVANT WAS AFFORDED THE DUE PROCESS TO WHICH HE WAS

    ENTITLED ........................................................................................................ 21

CONCLUSION............................................................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Adams v. United States,
686 F. Supp. 417 (S.D.N.Y. 1988) ...................................................10

Anglo Am. Ins. Grp., P.L.C. v. CalFed, Inc.,
940 F. Supp. 554 (S.D.N.Y. 1996) ...................................................10

Bueno v. Gill,
237 F. Supp. 2d 447 (S.D.N.Y. 2002)...............................................10

Convolve, Inc. v. Compaq Comput. Corp.,
No. 00 CV 5141 (GBD), 2005 U.S. Dist. LEXIS 32093
(S.D.N.Y. Dec. 7, 2005)....................................................................11

Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
No. 02 Civ. 2561 (KMW) (GWG), 2003 U.S. Dist. LEXIS 16908
(S.D.N.Y. Sep. 26, 2003) ..................................................................15

Gold v. The Last Experience,
No. 97 Civ. 1459 (JGK), 1999 U.S. Dist. LEXIS 3266
(S.D.N.Y. Mar. 22, 1999) .................................................................16

Henderson v. City of N.Y,
No. 05 CV 2588 (FB) (CLP), 2011 U.S. Dist. LEXIS 130350, at *2
(E.D.N.Y. Nov. 10, 2011)...................................................................9

Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.),
914 F. Supp. 997 (S.D.N.Y. 1996) ...................................................11

International Ore & Fertilizer Corp. v. SGS Control Servs., Inc.,
38 F.3d 1279 (2d Cir. 1994), cert. denied, 515 U.S. 1122 (1995) .........22

International Shipping Co., S.A. v. Hydra Offshore, Inc.,
875 F.2d 388 (2d Cir. 1989), cert. denied, 493 U.S. 1003 (1989) .........22

Jeffreys v. Rossi,
275 F. Supp. 2d 463 (S.D.N.Y. 2003)...............................................14

Justice v. City of N.Y.,
No. 13 CV 4016 (MKB), 2015 U.S. Dist. LEXIS 97657
(E.D.N.Y. July 27, 2015) ...................................................................9

Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.,
 No. 86 Civ. 6447 (JMC), 1989 U.S. Dist. LEXIS 9145
 (S.D.N.Y. Aug. 4, 1989) ...................................................................................11

Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union,
 No. 00 Civ. 3613 (LAP), 2004 U.S. Dist. LEXIS 17093
 (S.D.N.Y. Aug. 27, 2004) ...................................................................................9

National Union Fire Ins. Co. v. Stroh Cos.,
 No. 98 Civ. 8428 (DLC), 2000 U.S. Dist. LEXIS 2581
  (S.D.N.Y. Mar. 9, 2000), aff'd, 265 F.3d 97 (2d Cir. 2001)...................................11

Neske v. N.Y.C. Dep't of Educ.,
 No. 19-CV-2933 (VEC), 2019 U.S. Dist. LEXIS 194276
 (S.D.N.Y. Nov. 7, 2019) ...................................................................................10

In re Pennie & Edmonds LLP,
 323 F.3d 86 (2d Cir. 2003)...................................................................................15

Quintero v. Rite Aid of N.Y., Inc.,
 09 Civ. 6084 (JLC), 2012 U.S. Dist. LEXIS 61 (S.D.N.Y. Jan. 3, 2012) ...............10

Range Rd. Music, Inc. v. Music Sales Corp.,
 90 F. Supp. 2d 390 (S.D.N.Y. 2000).......................................................................9

Schlaifer Nance & Co. v. Estate of Warhol,
 194 F.3d 323 (2d Cir. 1999)...................................................................................22

Shrader v. CSX Transp., Inc.,
 70 F.3d 255 (2d Cir. 1995)...........................................................................9, 10, 25

Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
 682 F.3d 170 (2d Cir. 2012)...........................................................................13, 14

**Other Authorities**

Fed. R. Civ. P. 11 ...................................................................................... *passim*

Fed. R. Civ. P. 11(c)(2)....................................................................................12, 13

Local Rule 6.3 ...............................................................................................9, 11

Defendants the City of New York (the "City"), Police Officer Joseph Essig, Detective Ramon Portillo, and Police Officer Amanda Lorber f/k/a Amanda Murolo (collectively "defendants"), submit this memorandum in opposition to movant Vikrant Pawar, Esq.'s February 18, 2022 motion for reconsideration (hereinafter "Mov.'s Motion") of the Court's January 20, 2022 decision sanctioning Mr. Pawar (hereinafter "movant") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 11 and plaintiff under the Court's inherent powers.

Movant has not shown that this Court has committed plain error, and improperly seeks to re-litigate the issues raised in defendants' sanctions motion and the five-hour evidentiary hearing held before the Court. Movant failed to advance these newly crafted arguments in his opposition to the original sanctions motion, despite having been given notice and ample opportunity to do so. Movant should not be afforded this belated opportunity to argue against the sanctions that have already been entered against him. Furthermore, movant's claim that he was not aware that the sanctions were being sought against him at the time that he submitted his opposition to the original sanctions motion is preposterous, and belied by his prior opposition to the motion and his own testimony at the evidentiary hearing. Movant's motion for reconsideration should be denied because movant fails to show that this Court overlooked any controlling decisions or data or committed clear error, and his additional argument accusing defendants of withholding photographs is without merit.

## STATEMENT OF FACTS

On October 2, 2019, plaintiff, represented by movant, filed his original complaint in this matter naming as defendants Boris, Inc., Salmin[1] Blake, and Jane Blake as well as the City and NYPD John and Jane Doe 1-2 and alleging various claims under federal and state law. Dkt. No. 1,

---

[1] While the caption and docket header reads Salmin Blake, throughout the original and first amended complaints, Salmin is actually spelled "Salim," as such Salmin Blake will be referred to as Salim Blake throughout this motion.

Complaint. The key factual assertions central to plaintiff's causes of action involved the two-year lease he entered into with private defendants commencing January 15, 2019 through January 15, 2021 for the rental of a second-floor apartment ("subject premises") and related payments of security deposits and monthly rents, as well as an order of entry and possession of the subject premises obtained from Housing Court ("Housing Court Order") stemming from the purported lease agreement. Id. at ¶¶ 10-20.

On October 6, 2019, plaintiff filed an amended complaint adding new defendants: Borris, Inc., R.K.H.L., Inc., and GMA Enterprises. Dkt. No. 7, First Amended Complaint ("FAC"). Plaintiff asserted the same claims under federal and state law as the originally filed complaint and made the same critical factual assertions as in the original Complaint. Id. at ¶¶ 25-60.

In October or November of 2019, Edna Davoudi, the property manager for the subject premises called movant on behalf of Borris, Inc. to explain that the suit was fraudulent and provided documents to movant showing that plaintiff had no connection to the unit. Dkt No. 77, Hearing Transcript, at 121:16-124:8. These documents included the certificate of occupancy for the subject premises, alarm company invoices, architect invoices, and listing history, all documents which tended to show that plaintiff had no lease for the apartment with Borris, Inc. Id. at 123:22-124:16.

In December 2019, the Law Department received an email from an unknown person, who did not indicate who she/he was, with information regarding plaintiff and Salim Blake's relationship, their scheme to sue the city, and attaching photographs depicting multiple individuals. Declaration of Soo-Young Shin ("Shin Decl."), annexed hereto, ¶ 2; Dkt. No. 54-10, Kirkland Affidavit, ¶¶ 19-21. The unknown individual who sent the email claimed that plaintiff and Salim Blake were depicted in these photographs. Shin Decl., ¶ 2. The email did not provide any

identifying or contact information aside from the email address which was used. Shin Decl., ¶ 3; Dkt. No. 54-10, Kirkland Affidavit, ¶ 19. Defendants' counsel sent emails in response to this email in an attempt to identify the sender and verify the information contained in this email, but these emails went unanswered. Shin Decl., ¶ 3; Dkt. No. 54-10, Kirkland Affidavit, ¶ 21. Defendants' counsel also conducted internet and public records searches in an attempt to identify the sender, with no success. Shin Decl., ¶ 3.

In January 29, 2020, defendants served movant with initial disclosures, including NYPD DD5s documenting a report of an April 4, 2019 burglary of the subject premises and plaintiff's April 26, 2019 arrest. Dkt. No. 54-5. These DD5s included the assertions of Edna Davoudi, the complainant, that the subject premises was vacant on April 4, 2019, and it was due to be rented on April 5, 2019. Id. at ECF p. 7. It further confirmed that video surveillance was obtained from the date of the burglary, and a still image obtained from the video, which plaintiff acknowledged on the date of his arrest depicted himself. Id. at ECF pp. 15-16, 28.

On February 24, 2020, Borris Inc. filed a motion to vacate the Housing Court Order; this motion attached documentation demonstrating that plaintiff had no relationship to the subject premises. Dkt. No. 54-8. Movant was aware of the motion. Dkt No. 77, Hearing Transcript, at 155:6-25.

On March 9, 2020, movant filed a Second Amended Complaint ("SAC") in this case, with many of the same allegations, including that plaintiff had a valid lease to the apartment and a Housing Court Order for possession of the subject premises. Dkt. No. 33, Second Amended Complaint. This SAC attached as exhibits the Housing Court Order and plaintiff's purported lease. Id.

On April 29, 2020, defendants served movant with the complete Housing Court file, which included Borris, Inc.'s motion to vacate the Housing Court Order and documentation proving that plaintiff never had a relationship to the subject premises. Dkt. No. 54-8; Dkt No. 77, Hearing Transcript, at 161:23-162:15, 181:3-12.

On May 5, 2020, an individual responded to one of defendants' counsel's replies to the December 2019 email. Shin Decl., ¶ 4. In a subsequent email exchange, the individual provided a contact phone number. Id. On May 8, 2020, defendants' counsel called the number provided and spoke with an individual who identified herself as Margaret Kirkland. Shin Decl., ¶ 5; Dkt. No. 54-10, Kirkland Affidavit, ¶ 22. Margaret Kirkland provided contact information, information about herself, and her relationship to plaintiff. Shin Decl., ¶ 5. Margaret Kirkland further provided information alleging that plaintiff never rented the subject premises, that plaintiff and Salim Blake were friends, and stated that plaintiff had lied at his 50-h hearing. Shin Decl., ¶ 5; Dkt. No. 54-10, Kirkland Affidavit. The photographs which were attached to the email from the unknown sender in December 2019 were not discussed. Shin Decl., ¶ 6.

On July 7, 2020, defendants' counsels spoke with movant, explaining defendants' position as to Rule 11 obligations and asking that movant withdraw the complaint in light of the evidence showing that plaintiff had fraudulently obtained the Housing Court Order and never had a valid lease for the subject premises: Borris Inc.'s motion to vacate the Housing Court Order, NYPD documents, and the information provided by Margaret Kirkland. Shin Decl., ¶ 9; Dkt. No. 42, p. 3. At this time, defendants' counsels and Margaret Kirkland had not discussed the photographs affixed to the December 2019 email from the unknown sender. Shin Decl., ¶ 6.

Following movant's refusal to withdraw the compliant, on July 17, 2020, defendants filed a letter motion seeking an evidentiary hearing to determine whether plaintiff had orchestrated a

4

fraud on the Court or alternatively, a conference with the Court to discuss the issues in further detail. Dkt. No. 42.  In its motion, defendants raised concerns about the legitimacy of plaintiff's lawsuit and identified potential Rule 11 violations, based on information provided by Margaret Kirkland and corroborated by documents filed in a New York City Housing Court. Dkt. No. 42.

Plaintiff, at the time represented by movant, filed a response that same day, July 17, 2020. Dkt. No. 43. Notwithstanding the evidence undermining the legitimacy of plaintiff's complaints, movant argued against a hearing, stating that this would be an "end run" around the rules of evidence and trial and that this type of hearing would be a "prior 'bite of the apple' by challenging one party's version of the events under the guise of fraud or an alleged Rule 11 violation.'" Dkt. No. 43, p. 2.

On July 20, 2020, the Court issued an Order in response to defendants' motion for a hearing, setting a Rule 11 motion briefing schedule, for defendants to serve plaintiff with their Rule 11 sanctions by August 10, 2020, if plaintiff did not cure the conduct complained of, for defendants to file the motion on August 31, 2020. Dkt. Entry dated July 20, 2020. The Court further set forth the relevant legal standard and ordered an evidentiary hearing. Id. Since at the time of this July 20, 2020 Order, plaintiff was represented by movant, movant was on notice that a Rule 11 motion would be served on him 21 days after the Order, on August 10, 2020.

Sometime at the end of July 2020, defendants' counsel recalled the photographs attached to the original December 2019 email to the Law Department from the then unknown sender. Shin Decl., ¶ 13. Defendants' counsel asked Margaret Kirkland about the photographs, and on July 30, 2020, Margaret Kirkland sent the photographs and provided information about the identities of the individuals depicted in the photographs. Shin Decl., ¶ 13. Defendants promptly turned the photographs over to movant on August 3, 2020. Shin Decl., ¶ 14; Dkt. No. 77, Hearing Transcript,

176:9-11. Even after being provided with this additional information demonstrating that his client was perpetuating a fraud on the court and that the pleadings filed by movant were not only frivolous but fraudulent, movant did not withdraw the pleadings. Instead, on August 6, 2020, four days prior to the service of defendants' Rule 11 motion, movant filed a motion to withdraw as plaintiff's attorney and the Court granted the motion. Dkt. No. 44.

On August 10, 2020, defendants' Rule 11 motion was served both on the plaintiff, who at the time was *pro se*, as well as on movant. The motion sought sanctions against plaintiff and plaintiff's former counsel, movant Mr. Pawar, under Fed. R. Civ. P. 11 and the Court's inherent powers.

On August 20, 2020, plaintiff's new counsel, Garnett Sullivan, Esq., entered the matter. On that same day, plaintiff wrote to the Court to inform the Court of plaintiff's intention to withdraw the action, and if withdrawal of the action was not a sufficient cure, seeking an extension of time to respond to the Rule 11 motion. Dkt. No. 48.

On August 21, 2020, the Court ordered that a stipulation of dismissal be filed, directed plaintiff to respond to the Rule 11 motion, and directed defendants file the Rule 11 motion by September 14, 2020. Dkt. Entry dated August 21, 2020. The Court also re-scheduled the evidentiary hearing to October 5, 2020. Id.

On September 11, 2020, plaintiff filed a stipulation of dismissal of the action, signed by both parties. Dkt. No. 50.

On September 14, 2020, defendants filed their Rule 11 motion on the docket, and plaintiff filed his opposition. Dkt. Nos. 52-55.

Although he conceded that he was served with a copy of the motion, movant never served or filed an opposition to the defendants' Rule 11 motion. Dkt. No. 77, Hearing Transcript, 211:13-20, 208:24-209:1; Dkt. No. 76, ¶¶ 17-18, 22, 25-28.

On September 21, 2020, defendants filed their reply to plaintiff's opposition. Dkt. Nos. 57-58. Defendants noted in their reply that movant had failed to oppose defendants' Rule 11 motion, that he had effectively conceded defendants' arguments by his failure to respond to the motion, and requested that the Court impose sanctions on movant based on the arguments in defendants' sanctions motion. Dkt. No. 57, Def. Reply, pp. 3-4. On the same date, a copy of defendants' reply was served on movant.

On October 1, 2020, the Court issued a subpoena for movant to testify at the evidentiary hearing. Dkt. Nos. 64, 67.

On October 5, 2020, the Court held a five-hour evidentiary hearing via video conference. Minute Entry dated October 5, 2020. Movant testified at the evidentiary hearing, and was asked questions by defendants' counsel, plaintiff's new counsel, as well as the Court. Dkt No. 77, Hearing Transcript, pp. 135-212.

On October 26, 2020, defendants filed their respective final arguments and proposed findings of fact and plaintiff filed a reply. Dkt. Nos. 70-72.

On October 27, 2020, the Court *sua sponte* provided movant an opportunity to file any argument he wished: "Vik Pawar to submit the text messages between him and Plaintiff about which Pawar testified at the hearing, and to submit any proposed Findings of Fact or Conclusions of Law, or any other argument, he wishes." Dkt. Entry dated October 27, 2020. The Court further ordered that the defendants submit a supplemental calculation and documentation of the amount

of attorneys' fees, costs, and expenses that defendants sought to recover from plaintiff and movant.
Id.

On November 10, 2020, movant filed a response to defendants' motion for sanctions pursuant to Rule 11 and the Court's inherent powers, along with exhibits. Dkt. Nos. 75-76. In movant's response, he acknowledged that the defendants had moved for sanctions against movant. Dkt. No. 76, ¶¶ 17-18, 22, 25-28 ("…Rule 11 sanctions against Heaston and myself."). The core of movant's arguments against sanctions was that he himself was duped by plaintiff. Dkt. No. 76, ¶¶ 20, 22-23, 29. Movant now claims that he submitted this opposition "without knowing that he was the target of sanctions." Mov.'s Motion, p. 3. This in direct conflict with movant's November 10, 2020 response and movant's testimony at the evidentiary hearing, wherein he acknowledged that while he was not monitoring the docket, he was served via email with the motion and that the City argued that "I should be sanctioned for my conduct." Dkt. No. 77, Hearing Transcript, 211:13-20, 208:24-209:1; Dkt. No. 76, ¶¶ 17-18, 22, 25-28.

On January 20, 2022, the Court issued a memorandum and order, sanctioning both plaintiff and movant. Dkt. No. 78. The Court sanctioned plaintiff under the Court's inherent powers, and movant under Rule 11. Id. The Court awarded defendants $25,000, for which plaintiff and movant are jointly and severally liable. Dkt. Nos. 78-79. As a stipulation of dismissal had already been entered into between the parties, Dkt No. 50, the Court directed that the Clerk enter judgment for defendants and close the case. Dkt. No. 78.

On January 25, 2022, movant sought an extension of time file a motion for reconsideration, which the Court granted. Dkt. No. 80.

On February 18, 2022, movant filed the instant motion for reconsideration along with affidavits and exhibits. Dkt. No. 82.

## **STANDARD OF LAW**

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matter, in other words, that might reasonably be expected to alter the conclusion reached by the Court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Local Rule 6.3 (the moving party must "set forth concisely the matters of controlling decisions which counsel believes the Court has overlooked"). "It is thus 'well settled' that a motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Justice v. City of N.Y., No. 13 CV 4016 (MKB), 2015 U.S. Dist. LEXIS 97657, at *2 (E.D.N.Y. July 27, 2015) (quoting Analyticial Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012)) (internal citations omitted); see also Range Rd. Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000) ("Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court."). "In other words, 'reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources.'" Justice, 2015 U.S. Dist. LEXIS 97657, at *2 (quoting Hidalgo v. New York, 11 CV 5074 (JS), 2012 U.S. Dist. LEXIS 117270, at *1 (E.D.N.Y. Aug. 20, 2012)).

"In order to have been 'overlooked,' the decisions or data must have been put before [the court] on the underlying motion…and which, had they been considered, might have reasonably altered the result before the Court." Henderson v. City of N.Y, No. 05 CV 2588 (FB) (CLP), 2011 U.S. Dist. LEXIS 130350, at *2 (E.D.N.Y. Nov. 10, 2011). Otherwise, reconsideration will be denied. Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union, No. 00 Civ. 3613 (LAP), 2004 U.S. Dist. LEXIS 17093, at *5 (S.D.N.Y. Aug. 27, 2004) (citation omitted); see

also Anglo Am. Ins. Grp., P.L.C. v. CalFed, Inc., 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (successful motion for reconsideration "must present 'matters or controlling decisions the court overlooked that might materially have influenced its earlier decision'") (quoting Morser v. AT&T Info. Sys., 715 F. Supp. 516, 517 (S.D.N.Y. 1989)); see also Adams v. United States, 686 F. Supp. 417, 419 (S.D.N.Y. 1988) (motion for reconsideration denied where the Government failed to point to law which was overlooked and "evidence of agency interpretation which the court is said to have overlooked lends no support to the Government's case").

"'A motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided[,]' Shrader, 70 F.3d at 257, or where 'a losing party examin[es] a decision and then plug[s] the gaps of a lost motion with additional matters.'" Quintero v. Rite Aid of N.Y., Inc., 09 Civ. 6084 (JLC), 2012 U.S. Dist. LEXIS 61, at *4 (S.D.N.Y. Jan. 3, 2012) (citing Families for Freedom v. U.S. Customs & Border Prot., No. 10 Civ, 2705 (SAS), 2011 U.S. Dist. LEXIS 113143, at *2 (S.D.N.Y. Sept. 30, 2011) (citations and quotation marks omitted)); see also Neske v. N.Y.C. Dep't of Educ., No. 19-CV-2933 (VEC), 2019 U.S. Dist. LEXIS 194276, at *2 (S.D.N.Y. Nov. 7, 2019) ("A motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

**ARGUMENT**

**POINT I**

**MOVANT'S NEW ARGUMENTS ARE IMPROPER FOR A MOTION FOR RECONSIDERATION**

A motion for reconsideration "is limited to bringing to the Court's attention controlling authority or factual matters presented to the Court in the underlying motion and overlooked." Bueno v. Gill, 237 F. Supp. 2d 447, 449 n.1 (S.D.N.Y. 2002). "New assertions cannot be raised in a motion for reconsideration." Id. (citing National Union Fire Ins. Co. v. Stroh Cos., No. 98 Civ.

8428 (DLC), 2000 U.S. Dist. LEXIS 2581, at *17-18 (S.D.N.Y. Mar. 9, 2000), aff'd, 265 F.3d 97

(2d Cir. 2001)); see also Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc., No. 86 Civ. 6447

(JMC), 1989 U.S. Dist. LEXIS 9145, at *9-10 (S.D.N.Y. Aug. 4, 1989). "Rule 6.3 is not a vehicle

for 'rearguing those issues already considered when a party does not like the way the original

motion was resolved,' Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.), 914 F. Supp.

997, 1001 (S.D.N.Y. 1996), nor 'does it mean the parties get a 'do over.'" Convolve, Inc. v.

Compaq Comput. Corp., No. 00 CV 5141 (GBD), 2005 U.S. Dist. LEXIS 32093, at *6 (S.D.N.Y.

Dec. 7, 2005).

Movant, for the first time in the motion for reconsideration, submits that the Court

committed plain error "because of (1) the City's failure to adhere to the strict requirements of Rule

11, (2) the City attorney's deliberate misconduct in withholding key documents, and (3) Due

Process not afforded to Movant." Mov.'s Motion, p. 4. None of these arguments were made in

movant's opposition to defendants' original motion for sanctions. See Dkt. No. 75. As such, this

motion for reconsideration should be denied on this basis alone.

Although movant concedes that he was served with a copy of defendants' motion, movant

failed to file an opposition to defendants' motion for sanctions by the Court deadline. Indeed,

movant did not file any opposition at all until the Court *sua sponte* allowed movant an additional

opportunity to submit any arguments in its October 27, 2020 Order. Dkt. Entry dated October 27,

2020. Thereafter, on November 10, 2020, movant filed a letter response in opposition to

defendants' motion for sanctions. Dkt. Nos. 75, 76. This was exactly three months after movant

had been served with the motion for sanctions and one month after the evidentiary hearing was

held. Nowhere in movant's opposition did he raise the issue of not being afforded the safe harbor

period to cure the offending pleading, nor that movant was denied due process by the manner in

which the evidentiary hearing was conducted. Id. Movant did allude to the photographs, which he complains were withheld from him, but he did not make the arguments he makes in the instant motion. Dkt. No. 76, ¶ 14. As such, the Court should deny movant's motion for reconsideration, which is clearly seeking to relitigate issues that were already decided. None of the decisions or arguments that movant puts forth now were put before the Court on the underlying motion, and therefore cannot be said to have been overlooked.

**POINT II**

**MOVANT WAS ON NOTICE OF DEFENDANTS' INTENT TO MOVE FOR SANCTIONS AND WAS AFFORDED THE OPPORTUNITY TO WITHDRAW THE COMPLAINT, BUT INSTEAD CHOSE TO WITHDRAW AS PLAINTIFF'S ATTORNEY DAYS BEFORE SERVICE OF THE RULE 11 MOTION**

Even had movant's arguments been timely and properly raised, the sanction award would still be appropriate. For the first time in movant's motion for reconsideration, movant argues that the Court overlooked the City attorney's purported failure to comply with Rule 11. Mov.'s Motion, pp. 5-8. Movant argues that he was not afforded the 21-day safe harbor time period and that by the time that the Rule 11 motion was served upon him, movant had already withdrawn from representing plaintiff and therefore was not in a position to be able to cure the deficiency by withdrawing the offending complaint. Id. Movant's argument lacks merit.

Under Fed. R. Civ. P. 11(c)(2), a Rule 11 motion must be served "but it must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." This 1993 amendment was intended to provide a safe harbor against Rule 11 motions, specifically to avoid parties' reluctance "to abandon a questionable contention lest that be viewed as evidence of

12

a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions." Fed. R. Civ. P. 11, Advisory Committee's note, 1993 amend.

The Rule 11 motion to be served on the party prior to filing to satisfy the 21-day safe harbor period need not be the fully supported, briefed motion which is later filed. Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 176 (2d Cir. 2012) ("Rule 11(c)(2) requires only the service of '[a] motion' or '[t]he motion.'...It does not require the service of a memorandum of law or affidavits, nor does it use the words 'formal fully supported motion.'") (internal citations omitted). The Second Circuit in Star Mark Mgmt. noted that under the federal rules, "a motion '(A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought.' A 'motion' can take different forms, and it is distinct from a memorandum of law or affidavit. The drafters of the rule surely understood this distinction when crafting the safe harbor requirement. " Id. at 176-177 (quoting Fed. R. Civ. P. 7(b)(1)). In Star Mark Mgmt., the moving party served a notice of motion on their adversary, giving notice that it would be seeking sanctions under Rule 11 and identifying reasons why it believed Rule 11 had been violated. Id. at 177. The Court held that this constituted notice of the alleged sanctionable conduct and provided an opportunity for the party against whom the sanctions were sought to determine whether there was a non-frivolous basis for the pleading. Id. Lastly, the Court noted the following:

> To require that a party go through the expense of preparing a fully supported motion with a memorandum of law and exhibits would undermine one of the main purposes of the safe harbor provision, i.e., "to reduce, if not eliminate, the unnecessary expenditure of . . . adversary resources." The purpose of the provision is not to cause the party opposing a frivolous filing to incur costs merely to have the filing withdrawn, but to give the opponent notice and an opportunity to consider withdrawing the filing without the court's involvement. Id. (internal citations omitted).

While it is correct that the failure to comply with the safe harbor provision is a basis for denying a motion for sanctions, as evidenced by the Second Circuit's decision in Star Mark Mgmt., service of a fully briefed Rule 11 motion is not the only way the safe harbor provision can be satisfied. Id.; see also Jeffreys v. Rossi, 275 F. Supp. 2d 463, 480 n.27 (S.D.N.Y. 2003) (holding that despite defendants' failure to serve their Rule 11 motion on plaintiff 21 days prior to filing, defendants' noncompliance was "merely technical" and that plaintiff was provided with sufficient notice of defendants' intent to move and afforded opportunity to withdraw the offending papers, and therefore defendants were entitled to a decision on the merits of their Rule 11 motion for sanctions).

In the instant action, on July 17, 2020, defendants filed a letter with the Court detailing their basis for believing that plaintiff, at the time represented by movant, had committed a fraud and raising the issue of Rule 11 violations. Dkt. No. 42. As plaintiff's counsel, movant responded to the letter. Dkt. No. 43. The Court in turn issued an Order which set a schedule for the defendants' Rule 11 motion, and included the relevant standard. Dkt. Entry dated July 20, 2020. This briefing schedule provided that the defendants would serve, but not file, their Rule 11 motion on August 10, 2020, 21 days after the Court's Order. Id. The Order further directed that 21 days following service of the Rule 11 motion, if the plaintiff did not cure the conduct complained of, that defendants would file the motion and plaintiff respond. Id. Defendants' July 17, 2020 letter coupled with the Court's July 20, 2020 Order put movant on notice that defendants would be seeking sanctions under Rule 11 and the reasons why defendants believed that Rule 11 had been violated. This satisfied the safe harbor notice and opportunity to cure provisions of Rule 11.

On August 6, 2020, four days before movant knew that he would be served with the Rule 11 motion as per the Court's Order, movant chose to withdraw as plaintiff's counsel, rather than

14

withdraw the offending pleading. Dkt. No. 44. The movant now claims that, because he had withdrawn as counsel after already being afforded 21 days to cure the conduct but before the court directed defendants to serve their Rule 11 motion on both plaintiff and him, he was no longer in a position to cure the defect. Mov.'s Motion, pp. 7-8.

Movant cites to In re Pennie & Edmonds LLP for the proposition that "a sanctions motion is untimely if first filed with the court after the opportunity to withdraw the offending pleading has elapsed." Mov.'s Motion, p. 8 (citing In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003)). Movant argues that because he had withdrawn as counsel, he no longer had the opportunity to withdraw the complaint and therefore the defendants' motion was untimely. However, the occasions that the Second Circuit contemplated in In re Pennie & Edmonds LLP are completely different from the issue presented in this matter. 323 F.3d 86, 89 (2d Cir. 2003). The cases cited by the Second Circuit in discussing this proposition were cases in which the complaint had been dismissed, motion for summary judgment had been decided, or where final judgment had been entered and hence, there was no opportunity to correct or withdraw the submission because the matter had been dismissed or decided on other grounds. Id. Therefore, in those instances, a sanctions motion under Rule 11 was untimely because the matter had been decided. Id. Here, movant's withdrawal from the case is a completely different circumstance.

As discussed *supra*, movant had more than sufficient notice and opportunity to cure the offensive pleading prior to withdrawing as counsel. He simply chose not to do so. And it is well-established that "an attorney's withdrawal from a case does not prevent the imposition of Rule 11 sanctions for papers filed prior to the withdrawal." Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 02 Civ. 2561 (KMW) (GWG), 2003 U.S. Dist. LEXIS 16908, at *18 (S.D.N.Y. Sep. 26, 2003) (citing Cross & Cross Props., Ltd. v. Everett Allied Co., 886 F.2d 497, 505 (2d Cir.

1989) (a "late effort to withdraw [does] not resolve the problem if counsel failed to make a reasonable inquiry before the counterclaim was filed"); <u>Gold v. The Last Experience</u>, No. 97 Civ. 1459 (JGK), 1999 U.S. Dist. LEXIS 3266, at *4 (S.D.N.Y. Mar. 22, 1999) ("withdrawal does not absolve [an attorney] of liability for Rule 11 sanctions").

In <u>DeFrancesco v. Mirador Real Estate</u>, the attorneys who were the subject of a Rule 11 sanctions motion withdrew as plaintiff's counsel during the safe-harbor period, and the defendants filed their sanctions motion after their withdrawal. No. 18-CV-4032 (VSB) (KHP), 2019 U.S. Dist. LEXIS 120066, at *13-15 (S.D.N.Y. July 15, 2019). The former plaintiff's attorneys argued that the defendants failed to comply with the safe-harbor provision of Rule 11 because the motion was filed after their withdrawal. <u>Id.</u> The Court held that the defendants were entitled to file its motion:

> While it is true that, prior to the expiration of the safe-harbor period, the [ ] Firm concluded it had irreconcilable differences with Plaintiff and could not continue to represent her, the filing of the motion to withdraw did not satisfy the purpose of the safe-harbor period—withdrawal or correction of the allegedly problematic factual contention (i.e., Plaintiff's concession that she signed the arbitration agreement and that it was otherwise valid and enforceable). Thus, Defendant was entitled to file its motion. <u>Id.</u>

As in <u>DeFrancesco</u>, movant's withdrawal from this matter did not satisfy the purpose of the safe-harbor period. This Court correctly concluded that movant had failed to further investigate and correct the Second Amended Complaint, filed well before movant withdrew as counsel, and therefore was subject to sanctions. <u>See generally</u>, Dkt. No. 78, Memorandum and Order. The Court independently "gave [movant] notice and an opportunity to explain why he failed to conduct further investigation before filing the SAC, but [movant] failed to provide an adequate explanation." Dkt. No. 78, Memorandum and Order, p. 15.

If this Court were to accept movant's overarching proposition that no attorney could be the subject of a Rule 11 sanctions motion that is served and filed after the attorney withdraws from a

matter, even for conduct that occurred prior to the attorney's withdrawal and of which the attorney was on notice that sanctions would be sought, this would mean that any attorney could simply choose to withdraw from the matter once the attorney becomes aware that the opposing party is contemplating a Rule 11 motion, without curing the complained of conduct. This absurd result would defeat Rule 11's purpose to deter and avoid frivolous litigation and provide litigants an opportunity to cure the complained of conduct.

Under the procedural history of this matter, which the Court thoroughly discussed in its Memorandum and Order, the movant was well aware that defendants would seek sanctions and that a Rule 11 motion was due to be served on him. Defendants had approached movant to express their concerns of fraud, even prior to bringing these concerns to the Court or the Rule 11 briefing schedule being set by the Court. Once the Court issued its July 20, 2020 Order, movant was on notice that a Rule 11 motion was to be served on August 10, 2020 if plaintiff failed to cure the complained of conduct before then. Rather than cure the complained of conduct, a mere four days before the Rule 11 motion was due to be served, movant withdrew as counsel. Movant should not be allowed to avoid the consequences of his conduct by choosing to withdraw as counsel, which movant knew would not cure the conduct for which sanctions were to be sought.

## POINT III

### DEFENDANTS DID NOT IMPROPERLY WITHHOLD DISCOVERY AND DEFENDANTS DID NOT ADVOCATE FALSE FACTS

Movant's next newly presented argument--that the Court overlooked false facts that the City attorneys advocated, namely with regard to the date that movant was provided photographs of plaintiff and Salim Blake—also lacks any merit. Mov.'s Motion, pp. 9-10. Other than general remarks about the photographs in movant's original opposition to defendants' motion, these

arguments are also raised for the first time in this motion for reconsideration. Dkt. No. 76, ¶ 14. And despite being provided ample opportunity to do so, movant wholly failed to demonstrate that he conducted an investigation into plaintiff's fraudulent conduct. Id. at p. 10.

As a preliminary matter, contrary to the movant's claim, defendants never argued that movant was in possession of the photographs of plaintiff and Salim Blake in May 2020. See Dkt. No. 54-55, Defendants' Motion for Sanctions ("Defs' R11 Motion"); Dkt. No. 77, Hearing Transcript; Dkt. No. 70, Proposed Findings of Fact. Indeed, movant would not be advancing this meritless argument if he had bothered to read the motion served on movant or the additional submissions after the hearing, or read the transcript of the hearing. However, the date that movant received the photographs is by no means determinative to the sanctions award. The photographs were just one of many pieces of evidence demonstrating that a fraud was being committed on the Court and the other parties. Yet, movant chose not to act on any of this information. And, indeed, even after receiving the photographs, movant still did not cure the complained of conduct. Instead, movant chose simply to withdraw and leave the frivolous pleading on the docket. To now claim he would have acted differently had he received the photographs earlier is disingenuous, at best.

Movant is correct that the photographs in question were provided to him on August 3, 2020. Shin Decl., ¶ 14. Defendants' counsel received the photographs from Ms. Kirkland on July 30, 2020 and promptly turned over the photographs in question to movant. Id. at ¶¶ 13-14. The Court cited to movant's testimony at the hearing and Ms. Kirkland's affidavit as support for the preposition that the photographs were given to movant in May 2020. Dkt. No. 78, Memorandum and Order, pp. 11, 15. This appears to be an oversight that has no bearing on the ultimate outcome. This is not plain error, and certainly not a basis for the Court to reconsider its decision.

18

Further, despite movant's claims to the contrary, defendants' counsel did not improperly withhold the photographs or any other information from movant. As detailed *supra*, while there was an email from an unknown sender in December 2019 alleging that plaintiff was committing a fraud, it was not until May 2020 that this individual responded to defendants' counsel and revealed her identity as Margaret Kirkland. Shin Decl., ¶¶ 2-6. While the original email from the unknown sender attached photographs whom the unknown sender claimed depicted plaintiff and Salim Blake, defendants' counsel did not discuss the photographs with Ms. Kirkland until the end of July 2020. Id. at ¶¶ 2, 13. Initially, defendants' counsel independently sought to verify Ms. Kirkland's identity and her relationship to plaintiff. Id. at ¶¶ 7-8. The information Ms. Kirkland provided about plaintiff and Salim Blake was detailed in defendants' July 17, 2020 letter to the Court as well as in Ms. Kirkland's subsequent affidavit. Shin Decl., ¶ 5; Dkt. No. 42; Dkt. No. 54-10. Rather than act on this information, movant objected to the requested hearing and accused defendants of trying to circumvent discovery. Dkt. No. 43.

It was not until the end of July 2020 that defendants' counsel recalled the photographs which were attached to the original email from the unknown sender. Shin Decl., ¶ 13. Defendants' counsel asked Ms. Kirkland about these photographs and Ms. Kirkland sent the photographs and an explanation of who the photographs depicted. Id. at ¶ 13. After receiving the photographs and information from Ms. Kirkland on Thursday, July 30, 2020, defendants' counsel turned over the photographs to movant on Monday, August 3, 2020. Id. at ¶¶ 13-14. While defendants' counsel could not independently verify that the depicted photographs were of Salim Blake or plaintiff, after considering the totality of circumstances and crediting Ms. Kirkland who was willing to sign an affidavit, a decision was made to have Ms. Kirkland provide an affidavit and include the

19

photographs, which were subsequently submitted as part of defendants' sanctions motion. Dkt. No. 54-10.

This Court's decision in finding that movant violated Rule 11 by presenting pleadings to the Court without conducting an inquiry that was reasonable under the circumstances was not based on these photographs. Dkt. No. 78, Memorandum and Order, pp. 14-15. The photographs may have led movant to finally become sufficiently suspicious and to withdraw as plaintiff's attorney, but the Court pointed to ample other evidence, which movant had in his possession well before the photographs as evincing movant's failure to conduct a reasonable investigation. Id. This Court specifically assessed the information that movant had in his possession at the time of the filing of the SAC in March 2020: documents provided to movant in October or November 2019 by the subject premises' property manager demonstrating that plaintiff had no connection to the apartment, Borris, Inc.'s February 24, 2020 motion to vacate the Housing Court Order similarly demonstrating that plaintiff had no connection to the apartment, and the police files related to the burglary of the apartment and plaintiff's arrest, then came to the conclusion that at a minimum, movant violated Rule 11 in filing the SAC. Id. at pp. 10-11, 14-15. Contrary to movant's arguments that movant was entitled to rely on the Housing Court Order in filing the SAC, Mov. Motion, p. 1 fn. 2, movant knew as early as October or November of 2019, through Edna Davoudi and documents she provided to him, that Borris Inc.'s position was that plaintiff did not have a valid lease to the premises, that the subject premises did not have a certificate of occupancy at the time that plaintiff claimed to have lived at the premises, and the subject premises was supposed to be vacant. Dkt No. 77, Hearing Transcript, at 121:16-124:8. This was even before the City defendants received the email from the unknown sender regarding a fraudulent scheme. Shin Decl., ¶ 2. Movant was aware that Borris Inc. would be moving to vacate the Housing Court Order. Dkt No.

20

77, Hearing Transcript, at 155:6-25. City defendants provided the full Housing Court file, including Borris Inc.'s motion to vacate, to movant on April 29, 2020. Dkt No. 77, Hearing Transcript, at 161:23-162:15, 181:3-12. City defendants discussed these developments with movant in July 2020. Dkt. No. 77, Hearing Transcript, 165:19-166:14; Dkt. No. 42, p. 3.

Documents, produced by both Borris Inc. and City defendants, showing that plaintiff did not have a valid lease and that plaintiff had fraudulently obtained the Housing Court Order, the two key documents that movant relied upon in filing the complaints in the matter, did not persuade movant to withdraw the case. Ms. Kirkland's assertions that plaintiff did not live at the subject premises, which were corroborated by the other documents in this matter, and which were promptly shared with movant, also did not dissuade the movant from pursuing this matter. Even more telling, even when confronted with the photographs, movant did not choose to cure the conduct, he instead simply withdrew as counsel.

This issue of when the photographs were disclosed does not materially change the decision reached by this Court. The photographs were promptly disclosed once they were received from an identified and verified source.

## POINT IV

### MOVANT WAS AFFORDED THE DUE PROCESS TO WHICH HE WAS ENTITLED

Again, for the first time in this motion for reconsideration, movant argues that he was not afforded due process. Mov.'s Motion, pp. 11-13. Movant complains that he was not apprised in advance that he was facing a penalty for not properly investigating, and that he was not allowed to fully participate or have representation in the evidentiary hearing. Id. Movant incredibly claims that he submitted his opposition to defendants' motion on November 10, 2020 "without knowing he was the target of sanctions as he had been unable to question or hear testimony at the Hearing."

Mov.'s Motion, p. 3. This in direct conflict with movant's November 10, 2020 response and movant's testimony at the evidentiary hearing, wherein he acknowledged that while he was not monitoring the docket, he was served via email with the motion and that the City argued that "I should be sanctioned for my conduct." Dkt. No. 77, Hearing Transcript, 211:13-20, 208:24-209:1; Dkt. No. 76, ¶¶ 17-18, 22, 25-28 (acknowledging that movant was the target of sanctions).

"At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999). The opportunity to submit written briefs are sufficient to provide an opportunity to be heard. International Ore & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F.3d 1279, 1286 (2d Cir. 1994) ("Appellants . . . had notice from  [the appellee's Rule 11 sanctions] motion, and an opportunity to be heard by opposing the motion in the affidavit submitted."), cert. denied, 515 U.S. 1122 (1995). The opportunity to be heard does not necessarily entitle the subject of the motion for sanctions to an evidentiary hearing. International Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 392 (2d Cir. 1989) ("We have previously rejected the notion that the imposition of sanctions pursuant to Rule 11 requires an evidentiary hearing."), cert. denied, 493 U.S. 1003 (1989). There is a difference between an evidentiary hearing to establish facts and a record on which to decide a sanctions motion and a hearing at which the subject of the sanctions motion is allowed to present oral argument and defend against sanctions. Schlaifer Nance & Co., 194 F.3d at 335. A court may exercise its discretion to provide an opportunity to be heard to the subject facing sanctions. Id. A denial of a request for a hearing does not necessarily violate due process. Id.

Movant was served with defendants' sanctions motion on August 10, 2020. The defendants' sanctions motion was clearly directed towards plaintiff and movant. Dkt. No. 54, Defs' R11 Motion, Table of Contents. The sanctions motion detailed movant's violation of Rule 11 as plaintiff's former counsel and put movant on notice of the sanctions he faced. Id. at pp. 19-25. Defendants alternatively argued that the movant should be sanctioned under the Court's inherent powers. Id. Arguably, movant was on notice even earlier than August 10, 2020, by this Court's July 20, 2020 Order, which set forth the Rule 11 briefing schedule and the relevant legal standard. Dkt. Entry dated July 20, 2020.

Movant never opposed defendants' sanctions motion; while he testified that he was not monitoring the docket after he withdrew, he acknowledged that he was served with defendants' sanctions motion. Dkt. No. 77, Hearing Transcript, 211:13-20. Nonetheless, he was afforded an opportunity to respond after the evidentiary hearing by this Court's Order. Dkt. Entry dated October 27, 2020. Movant did take the opportunity to respond and filed his opposition to defendants' sanctions motion on November 10, 2020. Dkt. Nos. 75-76. Movant did not complain about the manner in which the evidentiary hearing proceeded, nor did he claim that due process was not afforded to him. Id. Instead, he chose to argue that there was a vendetta against him. Id. Furthermore, movant could have applied to the Court for an opportunity to be heard at oral argument as the subject of the sanctions motion, movant did not do so. The evidentiary hearing held in this matter was to determine facts and to establish a record as to the facts as they related to the complaints filed in this matter. This hearing was not an oral argument for the subject of the sanctions motion to argue against sanctions. Hence, the manner in which it was conducted was proper.

Movant's reliance on <u>Wilson v. Citigroup, N.A.</u> is misplaced. 702 F.3d 720 (2d Cir. 2012). In <u>Wilson</u>, the court *sua sponte* sought sanctions against an attorney, without providing a specific notice of the conduct alleged to be sanctionable, the standard which would be utilized, and an opportunity to be heard on the matter. <u>Id.</u> This was not the case here. Defendants served a motion on movant, and movant had an opportunity to respond. The Court additionally "gave [movant] notice and an opportunity to explain  why he failed to conduct further investigation before filing the SAC, but [movant] failed to provide an adequate explanation." Dkt. No. 78, Memorandum and Order, p. 15. Movant was afforded the due process he was entitled to.

**CONCLUSION**

Movant solely seeks to relitigate issues that have already been decided. Movant does not provide any "controlling decisions or data that the court overlooked…that might reasonably be expected to alter the conclusion reached by the Court." Shrader, 70 F.3d at 257. The movant was given proper notice and opportunity to defend against the sanctions motion against him. The Court should not allow movant to relitigate in hindsight.

For the foregoing reasons and the reasons originally set forth in Defendant's Motion for Sanctions, Reply in Support of Defendants' Motion for Sanctions, and as set forth in this Court's January 20, 2022 Memorandum and Order, defendants respectfully request that the Court deny movant's motion for reconsideration.

DATED:      New York, New York
            March 21, 2022

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
City of New York
*Attorney for Defendants*
100 Church Street
New York, New York  10007
(212) 356-2329
soshin@law.nyc.gov

By:  /s/ *Soo-Young Shin*
      Soo-Young Shin
      *Senior Counsel*