UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
IRA HEASTON,

                 Plaintiff,

        - against -

CITY OF NEW YORK, P.O. JOSEPH ESSIG,
DET. RAMON PORTILLO, and P.O.
AMANDA F/K/A AMANDA MUROLO
LORBER,

              Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-5569 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

By Memorandum & Order dated January 20, 2022, the Court sanctioned attorney Vikrant Pawar pursuant to Federal Rule of Civil Procedure ("Rule") 11 for "presenting pleadings to the Court without conducting an inquiry that was 'reasonable under the circumstances.'" (Memorandum & Order ("M&O"), Dkt. 78, at 14 (quoting Fed. R. Civ. P. 11(b)).[1])  The Court's sanction order focused on Pawar's failure to conduct an investigation that was reasonable under the circumstances prior to filing the Second Amended Complaint ("SAC").  (*Id.* at 14–15.)  Pawar has now moved for reconsideration, largely focusing on issues outside the scope of the Court's Memorandum & Order, which Pawar did not raise in opposition to the motion for sanctions.  (*See* Memorandum of Law in Support of Movant Vik Pawar's Motion for Reconsideration of the Court's January 20, 2022 Decision ("Recon. Mem."), Dkt. 82.)  None of Pawar's arguments are persuasive.  Furthermore, to the extent these arguments have caused the Court to focus on his

---

[1] The Court also sanctioned Plaintiff Ira Heaston under its inherent powers, and substantially reduced the requested sanctions amount, but those issues are not contested on this motion for reconsideration.

actions after filing the SAC, those actions—up through the motion for reconsideration—reaffirm this Court's conclusion that Pawar failed to act with reasonable diligence in this case, and, indeed, raise concerns that Pawar still does not understand his obligations under Rule 11. For all of these reasons, as explained below, Pawar's motion for reconsideration is DENIED.

## BACKGROUND[2]

Pawar filed the initial complaint in this case on October 2, 2019. (Complaint ("Compl."), Dkt. 1.) That complaint named as defendants Boris, Inc.,[3] Salim Blake and Jane Blake (collectively, the "Blakes"), the City of New York (the "City"), and New York City Police Department ("NYPD") Officers John and Jane Doe 1–2 (collectively, "City Defendants"). (*Id.*) Plaintiff Ira Heaston alleged that he had entered into a lease with the Blakes and Boris, Inc. to rent a second-floor apartment in Queens (the "Apartment") from January 15, 2019, to January 15, 2021. (*Id.* ¶¶ 10–11.) According to Heaston, the Blakes and Boris, Inc. had locked Heaston, his wife, and their two children out of the Apartment in violation of the lease sometime between January and April 2019, and again on April 4, 2019. (*Id.* ¶ 13.) Heaston alleged that the Blakes and Boris, Inc. had "allowed [P]laintiff and his family access after locking them out the first time," but that after being locked out again on April 4, 2019, Heaston obtained an order from the New York City

---

[2] The facts are drawn from the procedural history of this case, the Court's factual findings from the October 5, 2020 evidentiary hearing on the Rule 11 motion, and the submissions of the parties. The Court relies on its prior factual findings to the extent they have not been disputed in the motion for reconsideration. Where the parties have clarified testimony presented at the October 2020 hearing in their reconsideration papers, the Court accounts for that. Because of new arguments raised on this motion, the Court also supplements its factual findings with prior submissions by the parties, particularly those of Pawar. The factual background is presented in relative detail for a motion for reconsideration because of the nature of Pawar's arguments—particularly the fact that he raises new arguments not raised in his briefing on the sanctions motion.

[3] Though, as discussed below, the spelling of "Boris, Inc." was changed to "Borris, Inc." in the First Amended Complaint, the Court relies on the spelling from the original complaint in describing the allegations therein.

Housing Court ("Housing Court") "directing that [P]laintiff and his family be allowed to regain possession of the [Apartment] and direct[ing] the NYPD to assist [P]laintiff and restore their rights." (*Id.* ¶¶ 13–15.)

The initial complaint further alleged that, on April 26, 2019, Heaston and his family were locked out of the Apartment a third time, so he called the NYPD's 107th Precinct for assistance. (*Id.* ¶¶ 16–17.) When the NYPD officers arrived at the Apartment, Heaston showed them a copy of the Housing Court Order "directing the NYPD to assist [P]laintiff and his family to gain access to the subject premises." (*Id.* ¶ 18–19.) Instead of helping Heaston, however, the officers arrested Heaston and took him back to the 107th Precinct. (*Id.* ¶¶ 20–21.) The charges against Heaston were dismissed, and he thereafter filed the instant action, represented by Pawar. (*See id.* ¶ 23.)

On October 9, 2019, before any defendant had answered, Pawar filed a first amended complaint ("FAC"), naming the same defendants, except spelling "Boris, Inc." as "Borris, Inc.," and adding new Defendants R.K.H.L. Inc. and GMA Enterprises. (FAC, Dkt. 7.) After receiving the FAC, in October 2019, Edna Davoudi, the property manager for the subject premises, called Pawar on behalf of Borris, Inc. two or three times to explain that the suit was fraudulent and offered to provide documents showing that Heaston had no connection to the Apartment. (Transcript of Civil Cause for Evidentiary Hearing ("Tr."), Dkt. 77, at 121:16–122:17, 123:2–12, 150:11–151:21; Def. Ex. B., Dkt. 60-1, at ECF 11 (showing version of complaint received by Davoudi).[4]) Pawar, however, declined to drop the suit, said he was going to move forward, and advised Davoudi that Borris, Inc. should get an attorney. (Tr., Dkt. 77, at 123:13–17, 150:1–2.)

---

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Despite the rebuff, Davoudi sent the documents to Pawar anyway.  (*Id.* at 123:22–124:8.) According to Davoudi, who the Court found credible, the documents included the certificate of occupancy for the Apartment, invoices from the alarm company, listing history, and invoices from the architect, among other documents—all of which tended to corroborate Davoudi's assertion that Heaston had no lease for the Apartment with Borris, Inc. or any other entity or person, and that Heaston never possessed a legal claim to the Apartment.  (*See id.*)  Pawar conducted no independent investigation into those documents or the veracity of Heaston's claims (*id.* at 151:6–152:2), but declined to drop the suit because he "had no reason to believe one way or the other" (*id.* at 151:16–17).  Additionally, Pawar was unable to locate the landlord named in the lease as "Salim Blake."  (*Id.* at 153:5–16.)  Pawar never visited the unit.  (*Id.* at 153:21–23.)

In December 2019, City Defendants received an email from an unknown person, who did not indicate who they were, stating that they had information regarding Heaston and Salim Blake and a scheme they had to sue the city.  (Declaration of Soo-Young Shin in Opposition to Movant Vik Pawar's Motion for Reconsideration ("Shin Decl."), Dkt. 83-1, ¶ 2.)  The email contained photographs which the sender alleged depicted Heaston and Salim Blake together.  (*Id.*)  City Defendants conducted internet and public records searches to identify the sender, to no avail.  (*Id.* ¶ 3.)  They also responded to the email, but did not receive a reply until May 2020, as discussed below.  (*Id.* ¶¶ 3–4.)

On January 29, 2020, City Defendants served Pawar with the police files on an April 4, 2019 burglary of the Apartment and Heaston's April 26, 2019 arrest.  (Tr., Dkt. 77, at 161:3–17; NYPD Burglary Documents, Dkt. 54-5.)  The files show that, after responding to the Apartment on April 4, 2019, the police learned that no one lived in the unit, obtained and reviewed a video of the suspected burglar entering the unit, and created a still photo of the burglar from the video.

(NYPD Burglary Documents, Dkt. 54-5, at ECF 7, 15–16.)  Contrary to what Heaston had told

Pawar, the police files that Pawar received did not indicate that Heaston had called the police to

report being locked out of the Apartment on April 26, 2019; rather, the files indicated that the

police had gone to the Apartment that day because they had received a report that the unit was

once again being burglarized.  (*Id.* at ECF 27.)  When the police arrived, they showed Heaston the

photograph of the person entering the Apartment on April 4, 2019. (*Id.* at ECF 28.)  Although

Heaston confirmed that he was the person in the photograph, he insisted that he had had the right

to enter the Apartment both times.  (*Id.*)  Heaston claimed that he had rented the Apartment from

Salim Blake and showed the police his falsified and falsely obtained documents.  (*Id.*)  The police

told Heaston that they would need to bring him to the precinct to investigate the validity of his

documents, but Heaston refused, at which point he was arrested.  (*Id.*)  Notably, this account from

the police files regarding Heaston's arrest is consistent with Heaston's testimony at the 50-h

hearing, but not the allegations in the complaints in this case.  (50-H Hearing Tr., Dkt. 60-3, at

40:19:–42:17.)

On February 24, 2020, Borris, Inc. filed a motion to vacate the Housing Court Order; the

motion attached all of the documentation demonstrating that Heaston had no relationship to the

apartment.  (Borris Motion to Vacate ("Exhibit H"), Dkt. 54-8, at ECF 7.)  Pawar was aware of

the order to show cause from the Housing Court but could not recall what was attached to the

motion.  (Tr., Dkt. 77, at 155:7–25; Exhibit H, Dkt. 54-8, at ECF 2.)  Pawar conducted no

investigation into anything relating to the Housing Court proceeding.  (Tr., Dkt. 77, at 156:1–6.[5])

---

[5] At oral argument on the motion for reconsideration (hereafter referred to as "oral argument"), Pawar represented that, the day before the argument, he finally inquired with the Queens County Civil Court about the status of this case and, as discussed below, obtained documentation suggesting that the motion to vacate the fraudulent Housing Court order had been

Despite being aware of the Housing Court proceedings and having access to the Housing Court filings, and despite having received the police files from City Defendants, on March 9, 2020, Pawar filed the SAC in this case, containing many of the same allegations as the initial complaint and FAC.  (SAC, Dkt. 33.)  The SAC still contained allegations that Heaston had a valid lease to the apartment and Housing Court order to enter the apartment—even attaching both documents as exhibits—and that Heaston was falsely arrested.[6]  (*Id.*)

On April 29, 2020, City Defendants provided Pawar with the complete Housing Court file, which included documentation demonstrating that Heaston never had a relationship to the Apartment.  (Tr., Dkt. 77, at 161:23–162:15, 181:3–6.)  At that point, Pawar confronted Heaston with the documentation.  (*Id.* at 181:13-23.)  While Pawar could not recall what Heaston said, Pawar was presumably satisfied with Heaston's explanation because he continued representing Heaston for roughly four more months and did not seek to withdraw or amend the false allegations in the SAC.  (*Id.*)

On May 8, 2020, City Defendants finally received a reply from the person who had emailed alleging that Heaston was perpetrating a fraud upon the Court.  (Shin Decl., Dkt. 83-1, ¶ 5.)  This time, the person identified herself as Margaret Kirkland, the younger sister of Toi Williams, Heaston's significant other at the time of his arrest on April 26, 2019.  (*Id.*; Tr., Dkt. 77, at 165:19–166:1; Motion for Evidentiary Hearing, Dkt. 42, at 2.)  Kirkland again told City Defendants that Heaston was perpetrating a fraud against the City with his lawsuit.  (Motion for Evidentiary

denied.  (Transcript of May 18, 2022 Civil Cause for Motion Hearing ("Tr. II") at 7:1–4, 11:24–12:10, 42:12–46:18.)

[6] Even though Heaston never leased the apartment in question (Tr., Dkt. 77, at 124:13–15), sometime before March 9, 2019, Borris, Inc. settled the claim for $2,000 (*id.* at 33:7–10, 157:11–14; Dkt. 32) and thus the private defendants were not named in the SAC (SAC, Dkt. 33).  The record does not indicate whether Pawar received attorney's fees as part of that settlement.

Hearing, Dkt. 42, at 2.)  According to Kirkland, Heaston and Salim Blake were long-time friends; they devised a scheme in order to illegally gain access to the Apartment; Blake created a company called Borris Inc., which did not exist; and Heaston doctored a lease agreement and rent receipts pertaining to the Apartment, which were then presented to the Housing Court in order to obtain a default judgment and an order of entry.  (*Id*. at 2–3)

On or about July 7, 2020, counsel for City Defendants spoke with Pawar, informed him about their conversation with Kirkland and the information she had provided.  (Shin Decl., Dkt. 83-1, ¶ 9; Motion for Evidentiary Hearing, Dkt. 42, at 3.)  The attorneys discussed

> Kirkland's allegations, Borris Inc.'s motion to vacate the Housing Court Order, and the NYPD documents related to the case.  [Defense counsel informed Pawar of] City [D]efendants' position that these documents and allegations raised questions about the legitimacy of plaintiff's lawsuit and Rule 11 obligations.  City [D]efendants asked movant to withdraw the case.

(Shin Decl., Dkt. 83-1, ¶ 9.[7])  Pawar declined to withdraw the case.  On July 13, 2020, City Defendants provided Pawar with a supplemental Rule 26(e) disclosure about Kirkland.  (Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(e) ("Rule 26 Disclosure"), Dkt. 82-3.[8])

On July 17, 2020, City Defendants filed their motion for an evidentiary hearing, informing the Court about the Kirkland revelations and the Housing Court file.  (Motion for Evidentiary

---

[7] At oral argument, Pawar complains that, at this meeting, City Defendants did not provide Pawar with certain details that were later included in Kirkland's affidavit.  (Tr. II at 39:6–11.)  None of Pawar's complaints, however, contradict what City Defendants say they told Pawar at this meeting.  To the extent there is any material contradiction, the Court finds the City's representations more credible.

[8] As discussed below, City Defendant's disclosure contained Kirkland's mailing address, but not her phone number (as required by Rule 26).  In follow-up emails, however, Pawar did not ask for Kirkland's phone number.  (Email Exchange, Dkt. 82-4.)  Instead, Pawar demanded records that he should have sought through a Rule 34 document request.  (*See id.*)

Hearing, Dkt. 42.)   City Defendants stated that they had informed Pawar about Kirkland's allegations and had given Pawar Kirkland's contact information.  (*Id.* at 3.)  They noted that,

> [i]f the evidentiary hearing were to determine that plaintiff orchestrated a fraud on the Court and then initiated a lawsuit stemming from his April 26, 2019 arrest, then plaintiff would have violated Rule 11 by filing a complaint with the Court containing materially false representations, thus requiring a dismissal of this lawsuit.

(*Id.* at 4.)

That same day, Pawar filed a letter opposing an evidentiary hearing.  (Dkt. 43.)  Pawar argued that "a pre-trial hearing as suggested by defense counsel would be unprecedented, and have a chilling effect upon the adversarial system," that City Defendants were "attempting an 'end run' around the rules of evidence and trial practice by suggesting that [this Court] conduct an unprecedented hearing," and that "if this hearing was allowed then any party in a civil action could have a prior 'bite of the apple' by challenging one party's version of the events under the guise of fraud or an alleged Rule 11 violation." (*Id.* at 1–2.)  Pawar further stated that he had "no knowledge except defense counsel's allegation as to the credibility of my client" and that, "[a]s an advocate, I had a duty not to judge." (*Id.* at 2.)

On July 20, 2020, the Court granted the request for an evidentiary hearing and set a briefing schedule consistent with the safe harbor provision of Rule 11.  (07/20/2020 Docket Order.)  The Court directed City Defendants to serve, but not file, their Rule 11 motion for sanctions on or before August 10, 2020.  (*Id.*)  If Plaintiff did not cure the complained-of conduct within 21 days, Plaintiff was directed to serve a response on or before August 31, 2020, on which date City Defendants and Plaintiff were both directed to file their papers.  (*Id.*)  Defendants were permitted to file a reply, if any, by September 7, 2020.  (*Id.*)  The evidentiary hearing was set for September 18, 2020, and later moved to October 5, 2020.  (*Id.*; 08/21/2020 Docket Order.)

Around July 30, 2020, City Defendants recalled that Kirkland's first email, sent before City Defendants knew her identity, contained photographs allegedly depicting Heaston and Salim Blake together.  (Shin Decl., Dkt. 83-1, ¶ 13; Transcript of May 18, 2022 Civil Cause for Motion Hearing ("Tr. II)") at 34:23–35:2.)  City Defendants asked Kirkland to resend the photograph, which she did.  (Shin Decl., Dkt. 83-1, ¶ 13.)  City Defendants discussed the photographs with Kirkland on August 3, 2020, and, that same day, shared them with Pawar.  (*Id.* ¶¶ 13–14; Recon. Mem., Dkt. 82-5.[9])

Pawar sent the photographs to Heaston, who told Pawar that the pictures were of Heaston's twin brother, not of him, or else were doctored.  (Tr., Dkt. 77, at 170:25–171:18, 172:2–11, 176:11–21, 205:17–206:14; Response to Motion for Rule 11 Sanction, Dkt. 74, Ex. 3.)  At that point, Pawar began to doubt Heaston's credibility, and decided to withdraw as Heaston's counsel.  (Tr., Dkt. 77, at 171:14–18, 176:11–21, 205:17–206:14.)  As Pawar concedes, Heaston asked Pawar to dismiss the action while Pawar was drafting his motion to withdraw.  (Response to Motion for Rule 11 Sanction, Dkt. 74, ¶ 15.)  Pawar did not, however, withdraw the action or cure the defective pleading.  Instead, on August 6, 2020—four days before the motion for Rule 11 sanctions was to be served—Pawar withdrew from the case.[10]  (Motion to Withdraw as Attorney, Dkt. 44; 08/06/2022 Docket Order.)

---

[9] Based on the August 31, 2020 hearing, the Court—in its January 20, 2022 Memorandum & Order—found that these photographs were disclosed to Pawar in May 2020.  The parties now both state that the photographs were not disclosed until August 3, 2020.  As discussed below, that does not change the Court's analysis.

[10] In a letter submitted to the Court after oral argument, Pawar points out that the Court approved his application to withdraw.  (Dkt. 88, at 1 n.1.)  The Court, however, was unaware of what had transpired between counsel for City Defendants and Pawar and how much evidence had already been made available to Pawar showing the fraud perpetrated by his client on this and the Housing Court.

On August 10, 2020, City Defendants served their Rule 11 motion—seeking sanctions against both Heaston and Pawar—on both Heaston and Pawar.  (Reply Memorandum of Law in Further Support of Defendants' Motion for Sanctions ("Sanctions Reply"), Dkt. 57, at 3; Defendants' Memorandum of Law in Opposition to Movant Vik Pawar's February 18, 2022 Motion for Reconsideration ("Recon. Opp."), Dkt. 83, at 6; *see* Tr., Dkt. 77, 211:13–20; *see also* Recon. Mem., Dkt. 82, at 3; Tr. II at 38:3, 38:20–23.)  Heaston, represented by new counsel, withdrew the action and filed an opposition to the Rule 11 motion.  (Dkts. 48, 50, 52–55.[11])  Although the motion explicitly requested that both Heaston and Pawar be sanctioned, Pawar submitted no opposition to the motion.  (*See* Memorandum of Law in Support of Defendants' Motion for Sanctions ("Sanctions Mem."), Dkt. 55, at Table of Contents, 19.)

On September 21, 2020, City Defendants filed their reply to Heaston's opposition and served it on Pawar.  (Sanctions Reply, Dkt. 57; Recon. Opp., Dkt. 83, at 7; Tr., Dkt. 77, at 211:13–20; Tr. II at 38:15–23.)  In it, City Defendants noted that Pawar had been served with the motion and had failed to oppose, and argued that, accordingly, City Defendants' arguments should be accepted and Pawar should be sanctioned.  (Sanctions Reply, Dkt. 57, at 3–4.)  On October 1, 2020, this Court issued a subpoena for Pawar to testify at the October 5, 2020 evidentiary hearing.

---

[11] Upon entering the case, Heaston's new counsel noted that "[Heaston] advised me that he had authorized his attorney, Vikrant Pawar, to seek dismissal of the action but [Pawar] instead opted to withdraw from the case."  (Dkt. 48.)  The Court instructed new counsel to dismiss the case by September 14, 2020.  (08/21/2020 Docket Order.)  New counsel dismissed the case on September 11, 2020 (Dkt. 50), and then invoked Rule 11's safe harbor period to avoid sanctions (Dkt. 52).  City Defendants conceded that Heaston's withdrawal of the complaint mooted a request for sanctions against Heaston under Rule 11, but still sought sanctions against Heaston under the Court's inherent powers, and against Pawar under Rule 11.  (*See* Sanctions Reply, Dkt. 57, at 4 n.3, 3–10.)  The Court did not sanction Heaston under Rule 11, but under its inherent powers.  (M&O, Dkt. 78, at 16–18.)  (The Court's August 8, 2020 Docket Order did not extend the safe harbor period as to Pawar, which expired on September 1, 2020, before the case was voluntarily dismissed.)

(*See* Dkts. 64, 67.)  Pawar agreed to testify at the hearing but did not request to introduce any evidence or call or question any witnesses.

On October 5, 2020, the Court held a five-hour evidentiary hearing by video.  (10/5/2020 Minute Entry.)  Four witnesses testified: (1) Heaston (Tr., Dkt. 77, at 23:22–88:9); (2) Vyacheslav Kandkhorov, the owner of Borris, Inc. (*id.* at 90:10–110:19); (3) Davoudi, the property manager for the subject premises (*id.* at 111:17–134:3); and (4) Pawar (*id.* at 135:19–210:6).  Heaston and City Defendants also introduced numerous exhibits.  (*See* Dkts. 59, 60, 66.)  At the close of the hearing—speaking to Heaston, City Defendants, and Pawar—the Court gave the parties two weeks to submit final argument and/or proposed findings of fact.  (Tr., Dkt. 77, at 215:21–22.)  That deadline was extended once.  (10/15/2020 Docket Order.)  Heaston and City Defendants submitted proposed findings of fact, but Pawar did not.  (*See* Dkts. 70–72.)  Accordingly, on October 27, 2020, the Court entered an order allowing Pawar to submit copies of certain text messages between himself and Heaston that he had referenced at the October hearing, "and to submit any proposed Findings of Fact or Conclusions of Law, or any other argument, he wishes," by November 10, 2020.  (10/27/2020 Docket Order.)  At that point, Pawar finally submitted a letter opposition to the Rule 11 motion.[12]  (Dkts. 74, 75.)

On January 20, 2022, the Court issued its Memorandum & Order, sanctioning Pawar under Rule 11 and Plaintiff Heaston under the Court's inherent powers, awarding City Defendants $25,000, inclusive of attorneys' fees and costs, and making Heaston and Pawar jointly and

---

[12] At oral argument on the motion for reconsideration, Pawar suggested that his opposition was somehow not a true opposition.  (Tr. II at 27:14–21.)  That argument is mystifying given the content of the opposition, which outlines Pawar's conduct in this case (Sanctions Opp., Dkt. 75, ¶¶ 6–17), summarizes City Defendants' arguments for sanctions against Pawar and attempts to rebut them (*id.* ¶¶ 18–24), musters statutory and case law to support his position (*id.* ¶¶ 25–26), and asks this Court not to sanction him because his conduct "was ethical and comported with [his] professional responsibilities" (*id.* ¶ 28).

severally liable for the $25,000 award.  (M&O, Dkt. 78.)  Pawar asked for an extension of time to

file a motion for reconsideration, and then filed his motion on February 18, 2022.  (Recon. Mem.

Dkt. 82.)  City Defendants filed an opposition on March 21, 2022 (Recon. Opp., Dkt. 83), and

Pawar filed a reply on April 4, 2022 (Reply Memorandum of Law in Support of Movant's Motion

to Reconsider ("Recon. Reply"), Dkt. 87).

On reconsideration, Pawar argues that "(1) the Court overlooked the fact that the strict

requirements for Rule 11 sanctions were not complied with, (2) the Court overlooked and adopted

some of the inaccurate facts advocated by the City attorneys, and (3) the Movant was not afforded

Due Process."  (Recon. Mem., Dkt. 82, at 5.)  Notably, Pawar did not argue either (1) or (3), *i.e.*,

that the requirements of Rule 11 or Due Process were not followed, in his original opposition to

the Rule 11 motion.  (Sanctions Opp., Dkt. 75.)

## LEGAL STANDARD – MOTION FOR RECONSIDERATION

"A party may move for reconsideration and obtain relief only when the party identifies an

intervening change of controlling law, the availability of new evidence, or the need to correct a

clear error or prevent manifest injustice."  *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021)

(brackets omitted).  "The standard for granting such a motion is strict, and reconsideration will

generally be denied unless the moving party can point to controlling decisions or data that the court

overlooked—matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court."  *Id.*  A motion for reconsideration "is not a vehicle for relitigating old issues,

presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

second bite at the apple."  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.

2012 (internal quotation marks and ellipsis omitted), as amended (July 13, 2012).  "[C]ourts will

not address new arguments or evidence that the moving party could have raised before the decision

issued." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (citing 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2810.1, pp. 163–64 (3d ed. 2012)).

## DISCUSSION

As noted, Pawar makes three arguments in his motion for reconsideration: (1) the Court overlooked the fact that the requirements for Rule 11 sanctions were not complied with; (2) the Court adopted inaccurate facts advocated by City Defendants; and (3) Pawar was not afforded due process.  (Recon. Mem., Dkt. 82, at 5.)  None of Pawar's arguments are availing.  Furthermore, based on these arguments and Pawar's focus on events that occurred after Pawar's filing of the SAC,[13] the Court finds that the post-SAC events reinforce the conclusion that Pawar's conduct in this case lacked reasonable diligence and fell below the standards of Rule 11.  In many ways, Pawar's conduct subsequent to filing the SAC was even less reasonable or justifiable than his failure to conduct any investigation after obtaining the NYPD and Housing Court files and before filing the SAC.

## I.     Rule 11's Safe Harbor Provision

Rule 11(c)(2), commonly known as the safe harbor provision, requires the party seeking sanctions to serve the motion on the subject of the sanctions, then give the subject 21 days to cure the complained-of conduct before filing the motion with the Court. Fed. R. Civ. P. 11(c)(2); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175–76 (2d Cir. 2012).  "An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period." *Star Mark Mgmt., Inc.*, 682 F.3d at 175.  However, the moving party need only serve the motion, not "supporting papers such as a

---

[13] As noted, the Court's sanctions decision focused on Pawar's failure to conduct a reasonable investigation prior to filing the SAC.  (*See* Dkt. 78, at 14.)

memorandum of law or affidavits" so long as the motion informs the subject of the sanctions of (1) the authority for the sanctions being considered and (2) the specific conduct or omissions for which the sanctions are being sought. *Id.* at 175–76.

Pawar argues that he was not served with the Rule 11 motion until after he had withdrawn as counsel to Heaston, and thus was no longer in a position to cure the complained-of conduct. (Recon. Mem., Dkt. 82, at 5–8.)  Pawar's argument is untenable for two reasons.

First, Pawar was given an opportunity to respond on his own behalf to City Defendants' sanctions motion and yet failed to raise his Rule 11 argument in his letter opposition to the motion. (Sanctions Opp., Dkt. 75.)  Pawar now represents to the Court that he filed his opposition to the Rule 11 motion "without knowing he was the target of sanctions" and that his opposition was somehow not a true opposition.  (Recon. Mem., Dkt. 82, at 3; Tr. II at 27:14–21.[14])  These statements, however, are directly contradicted by multiple other representations that Pawar has made to this Court.  For example, in his opposition to the Rule 11 motion itself, while discussing his withdrawal from the case, Pawar stated that City Defendants' then-counsel "[Raju] Sundaran had made it abundantly clear" that he was on a "crusade for Rule 11 sanctions against Heaston *and myself*."  (Sanctions Opp., Dkt. 75, ¶ 17 (emphasis added).)  In fact, Pawar's opposition is full of arguments plainly indicating that he understood that sanctions were sought against him for failing to conduct a reasonable investigation under the circumstances.  (*Id.* ¶¶ 20, 21 (attacking City Defendants' arguments about how Pawar failed to conduct a reasonable investigation under the circumstances), ¶¶ 25–26 (citing law explaining extent of a lawyer's obligation to conduct a

---

[14] At oral argument, Pawar also suggested that he failed to make the arguments that he is now making in opposition to the sanctions motion because he did not believe that the Court would sanction him.  (Tr. II at 10:22:2–11:3, 51:18–19.)  The Court discusses this point in more detail below.

reasonable investigation under the circumstances).)  Furthermore, when testifying at the October

5, 2020 evidentiary hearing—which occurred *before* Pawar filed his opposition to the Rule 11

motion—Pawar was asked if he was aware that City Defendants had filed a Rule 11 motion against

him and he stated, "I am today."  (Tr., Dkt. 77, at 208:24–209:2.)  Also at that hearing, Pawar

confirmed that, although he stopped monitoring the docket after withdrawing from the case, he

had received the sanctions motion and reply.  (Tr., Dkt. 77, at 211:13–20 ("I was getting e-mails

from the City Law Department attaching the motion and addressing -- I do remember seeing

something that, since I filed an opposition[,] I should be considered in default and I should be

sanctioned for my conduct.").)  At oral argument, Pawar once again confirmed receipt of the

motion and reply.  (Tr. II at 38:20–23.[15])  Indeed, Section III of the sanctions motion was expressly

titled, "Plaintiff's Former Counsel Violated Rule 11(b)(3) by Taking His Client's Word on Faith

With Disregard for Facts."  (Sanctions Mem., Dkt. 55, at Table of Contents, 19.)  Similarly, Section

I of City Defendants' reply in support of sanctions—which Pawar received *before* filing his

opposition—was titled, "Plaintiff's Former Counsel Should be Sanctioned Under Rule 11 and the

Court's Inherent Powers Because He Failed to Oppose Defendants' Sanctions Motion."  (Sanctions

Reply, Dkt. 57, at Table of Contents, 3.)  The Court thus finds Pawar's argument that he filed his

opposition to the Rule 11 motion "without knowing he was the target of sanctions" (Recon. Mem.,

Dkt. 82, at 3) to be completely incredible and, frankly, extremely troubling given that it was made

in a motion to reconsider Rule 11 sanctions against him.

Because it is clear that Pawar was aware that he was the subject of a Rule 11 motion for

sanctions at the time that he filed his opposition, he could have made any argument that City

---

[15] In a letter submitted after the oral argument, Pawar stated that "although at the oral
argument, I acknowledged receipt of the City's motion and reply papers in the Rule 11 sanctions,
I did not read them until after the Court issued its decision."  (Dkt. 88 at 1 n.1.)

Defendants had not complied with the safe harbor provision of Rule 11 in that opposition, but he did not.  (Sanctions Opp., Dkt. 75.)  For that reason alone, Pawar's argument about Rule 11's safe harbor provision is not an appropriate ground for reconsideration.  *Banister*, 140 S. Ct. at 1703 ("[C]ourts will not address new arguments . . . that the moving party could have raised before the decision issued."); *Analytical Survs.*, 684 F.3d at 52 (A motion for reconsideration "is not a vehicle for . . . presenting the case under new theories.").

Furthermore, even if Pawar's Rule 11 argument were properly before the Court, the Court would reject it for two reasons.  First, withdrawing from the case did not absolve Pawar of his Rule 11 obligations.  *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 505 (2d Cir. 1989) (A "late effort to withdraw d[oes] not resolve the problem if counsel failed to make a reasonable inquiry *before* the [challenged pleading] was filed)."); *DeFrancesco v. Mirador Real Est.*, No. 18-CV-4032 (VSB) (KHP), 2019 WL 5722120, at *5 (S.D.N.Y. July 15, 2019) (finding that withdrawing during the safe harbor period due to irreconcilable differences with client "did not satisfy the purpose of the safe-harbor period"), *report and recommendation adopted*, 2022 WL 203147 (S.D.N.Y. Jan. 24, 2022); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04-CV-604 (CSH) (DFE), 2008 WL 1777855, at *2 (S.D.N.Y. Apr. 16, 2008) ("As for defendants' contemplated claim against [plaintiff's counsel] for Rule 11 sanctions, his withdrawal from the case does not insulate him from such a claim for pre-withdrawal litigation conduct.  This Court will retain jurisdiction over a Rule 11 sanctions claim if defendants decide to assert it." (internal citations omitted)); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02-CV-2561 (KMW) (GWG), 2003 WL 22227956, at *7 (S.D.N.Y. Sept. 26, 2003) ("[A]n attorney's withdrawal from a case does not prevent the imposition of Rule 11 sanctions for papers filed prior to the withdrawal.").  As discussed, although Pawar claims that he did not realize that he was the

16

subject of the Rule 11 motion when it was served, that claim is demonstrably false.  (*See e.g.*, Sanctions Opp., Dkt. 75, ¶ 17.)  Pawar was served with the Rule 11 motion on August 10, 2020, and, by at least that point in time, had a 21-day period to attempt to cure the complained-of conduct.[16,17]  Despite the fact that, having withdrawn as counsel, Pawar could not move to dismiss Heaston's case, he could have attempted to do *something* to cure the Rule 11 violation.  Yet Pawar did *nothing*, not even file a response to the motion.  Pawar was thus afforded the safe-harbor period but instead chose to do nothing during that period to even attempt to cure the complained-of conduct.

Second, under the facts of this case, allowing Pawar to avoid Rule 11 sanctions by withdrawing from the case when he was aware of the complained-of conduct and in a position to cure it (*e.g.*, withdrawing the case as Heaston had asked Pawar to do)—and then attempting to invoke the protections of Rule 11—would undermine, not reinforce, the purpose of the safe-harbor period, which is to allow the targets of sanctions to "withdraw[] or correct[] . . . the allegedly problematic factual contention," not simply withdraw from the case and wash their hands of the matter.  *DeFrancesco*, 2019 WL 5722120, at *5 (finding that withdrawing during the safe harbor period due to irreconcilable differences "did not satisfy the purpose of the safe-harbor period").  As the Court explained at oral argument, "I use the analogy of someone who sneaks out the back

---

[16] Instead, new counsel was forced to enter and seek to withdraw the case, which was ultimately accomplished on September 11, 2020 (Dkt. 50), without a peep from Pawar.

[17] At oral argument, the Court misspoke, suggesting that the safe harbor period began when the Court issued its July 20, 2020 order scheduling briefing on the sanctions motion, and ended on August 10, 2020, when the motion was to be served.  (Tr. II at 9:1–4.)  In fact, the safe harbor period began on August 10, 2020, when the sanctions motion was served, and ended (for Pawar) on September 1, 2020.  The fact that Pawar withdrew five days before the safe harbor period began did not absolve Pawar of his obligations under Rule 11, as discussed.

door while the house is burning and doesn't call the fire department -- that's not an appropriate response for a lawyer." (Tr. II at 9:19–22.)

In this case, on or about July 7, 2020, City Defendants spoke with Pawar and discussed the Housing Court file, information obtained from Kirkland, and Rule 11 obligations, and asked Pawar to withdraw the case, but Pawar refused. (Shin Decl., Dkt. 83-1, ¶¶ 9–10.) On July 17, 2020, City Defendants filed their request for an evidentiary hearing, explaining why Rule 11 sanctions would be warranted, and Pawar opposed the evidentiary hearing. (Motion for Evidentiary Hearing, Dkt. 42; Dkt. 43.) On July 20, 2020, the Court granted the motion for a hearing, set a schedule consistent with Rule 11's safe harbor provision—which also gave Pawar 21 days to cure the complained-of conduct *before* the motion was served—and stated the standard for sanctions. (07/20/2020 Docket Order.) Then, four days before the motion was to be served—after finally becoming sufficiently skeptical of Heaston's allegations—Pawar withdrew from the case rather than curing the defective pleadings. (Dkt. 44; 08/06/2022 Docket Order.) Pawar made no effort to correct the record either before or after withdrawing as Plaintiff's counsel.

On the motion to reconsider, Pawar represents that he was not aware that he was the subject of the contemplated sanctions motion at the time that he withdrew as counsel, that is, before the sanctions motion was actually filed and before Pawar filed his opposition to it. (Recon. Mem., Dkt. 82, at 3.) At first blush, that representation has some support in the record. City Defendants' letter requesting an evidentiary hearing and this Court's order scheduling the evidentiary hearing only mention sanctions against Heaston, not Pawar. (Motion for Evidentiary Hearing, Dkt. 42; 07/20/2020 Docket Order.) However, Pawar's opposition to the Rule 11 motion makes it clear that, at the time he decided to withdraw as counsel, Pawar already knew that he was the target of the contemplated Rule 11 motion. As discussed, in explaining why he chose to withdraw as

counsel without moving to "dismiss the action" as Heaston had requested, Pawar wrote, "Sundaran had made it abundantly clear that in his mind . . . dismissing the action would not have stopped [defense counsel's] crusade for Rule 11 sanctions against Heaston *and myself*." (Sanctions Opp., Dkt. 75, ¶ 17 (emphasis added).) Pawar was thus aware that he was the subject of the contemplated Rule 11 motion, knew the bases for the Rule 11 motion, and was in a position to cure the complained-of conduct when he instead chose to withdraw from the case, leaving the case active and all of the false allegations and falsified documents on the docket uncorrected.

Under those facts—where Pawar and the Court had already been apprised of the challenged conduct, and the Court had set a briefing schedule that gave Pawar 21 days to cure the challenged conduct even before the motion was served—allowing Pawar to avoid sanctions by withdrawing from the case would not be consistent with the safe-harbor provision; indeed, it would undermine it.[18] While Pawar argues that City Defendants failed to follow Rule 11's procedural requirements,

---

[18] For this reason and others, Pawar's reliance on *In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003), and other cases, is misplaced. (*See* Recon. Mem., Dkt. 82, at 8.) In *Pennie*, a lawyer permitted a client to submit a false affidavit during litigation, and the Court *sua sponte* initiated Rule 11 proceedings against the lawyer after trial, when the lawyer "ha[d] no opportunity to withdraw or correct the challenged submission." *Pennie*, 323 F.3d at 87. The Second Circuit held that in order to sanction a lawyer under such circumstances, a court must find that the lawyer submitted the affidavit with subjective bad faith. *Id.* Furthermore, that standard only applies where the court *sua sponte* initiates sanctions proceedings "long after" a lawyer had an opportunity to correct the challenged filing. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 151 (2d Cir. 2009) ("*Pennie* stopped short . . . of a blanket rule that the subjective bad faith standard applied whenever there was no longer a safe harbor, finding it sufficient in that case that the court *sua sponte* initiated sanctions proceedings 'long after' the lawyer had an opportunity to amend or withdraw.").

This is not a case where the Court *sua sponte* initiated sanctions proceedings "long after" Pawar had an opportunity to amend or withdraw, or even at a point where Pawar had "no opportunity" to withdraw or correct the challenged submission. This is not even a case where Pawar was not afforded a safe harbor. Pawar had every opportunity to withdraw or correct the challenged submission, but instead chose to withdraw from the case. And even after he withdrew and the motion was served, Pawar took no action to correct the record during the safe harbor

it is actually Pawar who seeks to abuse the technical requirements of Rule 11, turning a rule meant to ensure that lawyers fulfill their ethical obligations into one that allows lawyers to evade accountability.  Pawar had a duty under Rule 11 to reasonably investigate allegations before filing them in a complaint or amended complaint.  Fed. R. Civ. P. 11(b).  As the Court has already found, at a minimum, Pawar violated that duty when he filed the SAC in this case.[19]  (M&O, Dkt. 78, at 14.)  He also has a duty of candor to this Court.  And when he finally realized that he had filed false allegations and falsified document in this case, and then chose to withdraw as counsel without correcting the record—even as Heaston asked him to correct the record—he violated that duty as well.[20]

For the reasons explained above, Pawar's argument that "the Court overlooked the fact that the strict requirements for Rule 11 sanctions were not complied with" (Recon. Mem., Dkt. 82, at 5) does not warrant reconsideration.[21]

---

period, instead choosing to remain silent while the parties and the Court were left to sort out and remedy the situation.

[19] Though not discussed in the Court's original decision, Pawar also violated that duty when he failed to conduct a reasonable investigation after receiving the Kirkland information from City Defendants, such as interviewing Kirkland himself, which might have helped Pawar resolve the doubts he described in his opposition to the sanctions motion (*see, e.g.*, Dkt. 75 ¶¶ 15-17), and take the proper course of action with respect to withdrawing the case.  Indeed, Pawar's opposition to the sanctions motion—in which he states that he had "no knowledge except defense counsel's allegation as to the credibility of my client" and that, "[a]s an advocate, I h[ad] a duty not to judge" (Dkt. 43 at 2)—demonstrates a disconcerting failure to understand that an advocate in fact has a duty to reasonably investigate his client's claims when making sworn allegations based on those claims before the Court.

[20] Because Pawar states that, after confronting Heaston with the photographs and before withdrawing, he had "several discussions with ethics counsel, and his partner, Robert Blossner" (Recon. Mem., Dkt. 82, at 3), the Court is left questioning either the information Pawar provided to those attorneys, or the advice they gave.

[21] Because Pawar did not raise any safe harbor argument in opposition to the motion for sanctions, the Court did not focus on his withdrawal from the case in its sanctions order.  As

## II.     The Date of Disclosure of the Photographs

Pawar's second argument in support of reconsideration is that the Court overlooked and adopted inaccurate facts advocated by City Defendants.  The only fact that Pawar argues the Court erroneously adopted, however, is that Pawar received the photographs of Heaston and Salim Blake together on May 8, 2020, rather than August 3, 2020.  (*See generally* Recon. Mem., Dkt. 82; Recon. Reply, Dkt. 87.)  That mistake is immaterial.  Both dates fall after Pawar filed the SAC, whereas the Court's sanction of Pawar was based on his failure to conduct an inquiry that was "reasonable under the circumstances" before filing the SAC:

> The Court finds that Attorney Pawar violated Rule 11 by presenting pleadings to the Court without conducting an inquiry that was "reasonable under the circumstances." Fed. R. Civ. P. 11(b).  That is true, at minimum, with respect to the filing of the SAC.  By the time of that filing: (1) Pawar had been provided with documents by the Apartment's property manager, Edna Davoudi, demonstrating that Plaintiff had no connection or entitlement to the Apartment, including the certificate of occupancy, invoices from the alarm company, listing history, and invoices from the architect, among other documents (Tr., Dkt. 77, at 123:24–124:8); (2) Pawar was aware of Borris, Inc.'s Housing Court motion, which included all the documents similarly demonstrating that Plaintiff had no relationship or claim to the Apartment (*id.* at 155:6–25; Exhibit H, Dkt. 54-8, at ECF 11); and (3) Pawar had received the police files for the April 4, 2019 burglary of the Apartment and Plaintiff's April 26, 2019 arrest, which showed, among other things, that Plaintiff had admitted to the police that he was the person captured on video entering the Apartment on April 4, 2019, when the building's owner told the

---

discussed, the Court sanctioned Pawar based on his failure to conduct an investigation that was reasonable under the circumstances before filing the SAC.  However, now that Pawar has re-directed the Court's attention to this period of time, Pawar's decision to withdraw from the case, rather than withdraw the SAC, even after his client had asked him to withdraw the SAC, is even more troubling than his failure to conduct a reasonable investigation before filing the SAC.  The fact that Pawar attempts to hide behind that conduct to avoid Rule 11 sanctions, and still believes that withdrawing was the correct course of action, is disturbing, as discussed in greater detail below.  The Court even considered increasing the sanctions levied against Pawar because City Defendants have had to expend additional resources defending against this procedurally improper and substantively meritless reconsideration motion.

police that no one had rightful access to the apartment (Tr., Dkt. 77, at 160:23–161:17; Exhibit E, Dkt. 54-5).[22]

(M&O, Dkt. 78, at 14–15.[23])

Only after reaching the conclusion that Pawar needed to be sanction based on that conduct did the Court note that, "[t]o make matters worse," Pawar continued to believe Heaston after being informed about Kirkland's statements and receiving the photographs of Heaston and Salim Blake. (*Id.* at 15.)  The Court concedes that this finding of fact was incorrect.  Based on the record developed in connection with the reconsideration motion, it is undisputed that Pawar actually withdrew from the case shortly after receiving the photographs.[24]  However, that does not change

---

[22] Although the Court did not mention this in its sanctions order, Heaston's 50-h testimony also contradicted the allegations in the complaints in this case and were consistent with the police files—another fact that should have prompted Pawar to conduct further investigation. (*See* 50-H Hearing Tr., Dkt. 60-3, at 40:19–42:17.)

[23] Pawar argues that "[a] reading of the [M&O] would prohibit Movant from reliance upon the Order of a Housing Court Judge over an undecided motion to vacate it, and a Certificate of Dismissal by the Criminal Court, over the purported records of police officers." (Recon. Mem., Dkt. 82, at 11.)  Not so.  Parties are of course permitted to rely on competing versions of facts. They may do so, however, only after conducting an inquiry that is "reasonable under the circumstances." Fed. R. Civ. P. 11(b).  Here, Pawar simply failed to do so, as established by his own testimony.

Furthermore, Pawar cannot hide behind the fact that "the SAC was filed in accordance with [Magistrate Judge Vera M. Scanlon's] Order on January 10, 2020," in part to remove the private parties who had settled and name the John Doe officers who had been identified.  (Recon. Mem., Dkt. 82, at 1 n.2.)  Judge Scanlon was not privy to all of the information that had been shared with Pawar, and not in a position to assess whether he had conducted an inquiry that was reasonable under the circumstances.  If Pawar needed extra time to conduct a reasonable inquiry before the deadline for filing the SAC, he could have simply asked for an extension.  For similar reasons, Pawar's attempt to rely on Judge Scanlon's purported skepticism about City Defendant's summary judgment motion (Recon. Reply, Dkt. 87, at 7–8) is unavailing.

[24] This Court believed that Pawar had received the photographs on May 8, 2020, because Pawar testified that he had received the information about Kirkland on that date. (M&O, Dkt. 78, at 11, 15 (citing Tr., Dkt. 77, at 165:25–166:1).)  Unfortunately, the exchange between Pawar and defense counsel quickly deteriorated, so the exact contents of what was shared with Pawar on that date were not detailed.  (*See* Tr., Dkt. 77, at 165–66.)

22

the fact that Pawar did not conduct an investigation that was reasonable under the circumstances before filing the SAC, which the Court always understood occurred before Pawar received the photographs. Furthermore, Pawar still received the photographs before withdrawing from the case, yet decided to withdraw as counsel rather than withdraw the SAC. As discussed in detail above, his decision to withdraw from the case rather than cure the defective pleadings when he was in a position to do so did not satisfy his obligations under Rule 11 or his duty of candor to this Court— and it would not have done so had he withdrawn three months earlier. Thus, whether Pawar received the photographs on May 8, 2020, or August 3, 2020, is immaterial because both dates fall after he filed the SAC and before he withdrew from the case. Nothing material to this Court's analysis happened between those two dates. It was inappropriate for Pawar to file the SAC even before receiving the photographs, and it was inappropriate for him to withdraw from the case rather than withdraw the SAC after obtaining the photographs.

Pawar also argues that the Court's mistake about when the photographs were disclosed was the result of defense counsel making affirmative misrepresentations with respect to this evidence to the Court. This assertion is baseless. Nowhere in City Defendants' papers is there any suggestion that Pawar was given the photographs on May 8, 2020. For Pawar to assert that defense counsel intentionally misled the Court, without any basis for doing so, is again—in the context of this case—extremely troubling. As the citations in this Court's Memorandum & Order indicate and as discussed, the Court believed that Pawar had received the photographs on May 8, 2020, because Pawar testified that he had received the information about Kirkland on that date, even though the testimony was ultimately unclear as to what was shared with Pawar on that date. (*Id.* at 11, 15 (citing Tr., Dkt. 77, at 165:25–166:1).) Regardless, the fact that defense counsel did not disclose the photographs earlier, when it had received them from an anonymous email address that

they could not verify, does not raise ethical concerns, as Pawar suggests.  (*See generally*, Recon. Reply, Dkt. 87.[25])

At oral argument, Pawar further argued that City Defendants' supplemental disclosure of Kirkland's information did not fully comply with Rule 26.  (Tr. II at 4:16–20.)  First, that argument could have been raised in opposition to the motion for sanctions, and is thus an inappropriate basis for reconsideration.  *Banister*, 140 S. Ct. at 1703 ("[C]ourts will not address new arguments . . . that the moving party could have raised before the decision issued."); *Analytical Survs.*, 684 F.3d at 52 (A motion for reconsideration "is not a vehicle for . . . presenting the case under new theories.").  Second, the argument is entirely misplaced because, like the photographs, Pawar would have received the information after filing the SAC and before withdrawing from the case, and Pawar himself testified that if he had received the information earlier in that window of time, he would have simply withdrawn from the case, rather than withdrawing the SAC.  (Tr. II at 4:21– 25.)  Furthermore, while City Defendants' Rule 26 disclosure was incomplete, in that it omitted Kirkland's phone number (Rule 26 Disclosure, Dkt. 82-3), a subsequent email exchange between the parties demonstrates that Pawar did not ask for Kirkland's phone number, but instead demanded records that would have properly been the subject of a Rule 34 document request. (Email Exchange, Dkt. 82-4.)  It thus appears that Pawar had no issue with the lack of phone number in the Rule 26 disclosure until this motion for reconsideration, where he now seizes it as a potential technicality to absolve himself of sanctions and shift blame.  But the Court has no reason to believe that the omission of Kirkland's phone number was anything but inadvertent and would have been corrected had Pawar asked about it.

---

[25] The Court finds defense counsel's representation at the oral argument that they did not recall the photographs until July 30, 2020, verified them with Kirkland on August 3, 2020, and shared them with Pawar that same day, entirely credible.  (Shin Decl., Dkt. 83-1, ¶ 13–14.)

24

For the reasons explained above, Pawar's argument that "the Court overlooked and adopted some of the inaccurate facts advocated by the City attorneys" (Recon. Mem., Dkt. 82, at 5) does not warrant reconsideration.

## III.   Due Process

Pawar's third and final argument for reconsideration is that he was denied due process.  He notes that, an "attorney facing possible sanctions must receive specific notice of (1) 'the conduct alleged to be sanctionable'; (2) 'the standard by which that conduct will be assessed'; and (3) 'the authority under which sanctions are being considered,' and must be given 'an opportunity to be heard on that matter . . . to [allow Movant] to defend against specific charges.'"  (Recon. Mem., Dkt. 82, at 13 (alteration in original) (quoting *Sakon v. Andrea*, 119 F.3d 109, 114 (2d Cir. 1997)).)  As noted, the Court sanctioned Pawar for not conducting an investigation that was "reasonable under the circumstances" before filing the SAC.  (M&O, Dkt. 78, at 14 (quoting Fed. R. Civ. P. 11(b)).)  Pawar now argues that he was not "apprised . . . that he faced penalty for not properly investigating" and was not given an opportunity "to establish his investigation and reasoning." (Recon. Mem., Dkt. 82, at 11.)  More specifically, Pawar argues that, at the Rule 11 evidentiary hearing, he "did not have an opportunity to listen, observe, examine, challenge testimony, call witnesses on his own behalf[,] or present his side of the story."  (*Id.* at 12.)

Like Pawar's first argument for reconsideration, this argument is unavailing for two reasons.  First, if Pawar believed that he was not afforded sufficient process throughout the sanctions proceedings, particularly at the evidentiary hearing, he could have raised that argument in his opposition to the Rule 11 motion, and he did not.  (Sanctions Opp., Dkt. 75.)  For that reason alone, Pawar's argument about due process is not an appropriate ground to grant his motion for reconsideration.  *Banister*, 140 S. Ct. at 1703 ("[C]ourts will not address new arguments . . . that

25

the moving party could have raised before the decision issued."); *Analytical Survs.*, 684 F.3d at 52 (A motion for reconsideration "is not a vehicle for . . . presenting the case under new theories.").

Second, Pawar was in fact afforded the process he now claims he was denied.  Although Pawar now claims that the did not realize that he was the target of sanctions until after filing his opposition to the Rule 11 motion (Recon. Mem., Dkt. 82, at 3), as explained above, that claim is flatly incredible and contradicted by several of Pawar's other, prior representations to the Court, both orally and in writing (*see supra* 14–15).  Pawar was aware that he was the subject of the contemplated sanctions motion by at least August 6, 2020, when he withdrew from the case. (Sanctions Opp, Dkt. 75, ¶ 17.)  Furthermore, the sanctions motion was served on Pawar. (Sanctions Reply, Dkt. 57, at 3; Recon. Opp., Dkt. 83, at 6; *see* Tr., Dkt. 77, at 211:13–20; *see also* Recon. Mem., Dkt. 82, at 3.)  Section II of the sanctions motion was titled "Plaintiff's Former Counsel Violated Rule 11(b)(3) by Taking His Client's Word on Faith With Disregard for Facts," and argued that Pawar "failed to conduct basic due diligence at every available opportunity to confirm plaintiff's factual contentions had evidentiary support," specifically pointing to Pawar's receipt of the Housing Court documents and police files.  (Sanctions Mem., Dkt. 55, at 19.)  Pawar was thus given notice of "the conduct alleged to be sanctionable."  (Recon. Mem., Dkt. 82, at 13 (quoting *Sakon*, 119 F.3d at 114) (internal quotation marks omitted).)  In fact, he was specifically given notice that the conduct alleged to be sanctionable as to him was "not properly investigating" before presenting factual allegations to the Court.  (*Id.* at 11.)  Furthermore, Pawar was presented with that notice even before the evidentiary hearing and post-hearing briefing.  Yet, as discussed, Pawar filed no opposition to the Rule 11 motion on his own behalf prior to the hearing.

Pawar was also well aware that an evidentiary hearing would occur—it was scheduled before he withdrew from the case.  (07/20/2020 Docket Order.)  Then, even after Pawar withdrew,

the Court granted a subpoena to ensure that Pawar would appear at the hearing.  (*See* Dkts. 64, 67.)  By that juncture, as Pawar acknowledged on the record, he knew that he was the subject of the Rule 11 motion along with Heaston.  Nevertheless, Pawar did not request to "listen, observe, examine, challenge testimony, call witnesses on his own behalf[,] or present his side of the story" at that hearing.  (Recon. Mem., Dkt. 82, at 12.)  If he had, the Court would have afforded him that opportunity.

In any event, after the hearing, Pawar was afforded the opportunity to submit briefing, which was sufficient to satisfy the requirement that he be given the "opportunity to be heard on th[e] matter . . . [allowing him] to defend against specific charges."  (Recon. Mem., Dkt. 82, at 13 (quoting *Sakon*, 119 F.3d at 114).)  Despite Pawar's suggestion—and the fact that the Court would have allowed Pawar to further participate in the evidentiary hearing if he had asked—the Second Circuit has repeatedly "rejected the notion that the imposition of sanctions pursuant to Rule 11 requires an evidentiary hearing."  *Ultegra LLC v. Mystic Fire Dist.*, 676 F. App'x 33, 36 n.2 (2d Cir. 2017) (quoting *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir. 1989)); *see also Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286–87 (2d Cir. 1994) ("Appellants having failed to respond to the motion for sanctions, the district court had no reason to exercise its discretion to hold an evidentiary hearing that had not been requested.").

Notably, Pawar initially failed to submit post-hearing briefing by the deadline set by the Court.  The Court, however, specifically instructed Pawar to produce the documents that he suggested supported his arguments, "and to submit any proposed Findings of Fact or Conclusions of Law, or any other argument, he wishes," by November 10, 2020.  (10/27/2020 Docket Order.)  Accordingly, Pawar was given the "opportunity to be heard on th[e] matter" that he requested.

(Recon. Mem., Dkt. 82, at 13 (quoting *Sakon*, 119 F.3d at 114) (internal quotation marks omitted).) Indeed, he was specifically given the opportunity that he now claims he was deprived of—an opportunity "to establish his investigation and reasoning." (Recon. Mem., Dkt. 82, at 11.)

Furthermore, Pawar was not only afforded an opportunity to be heard on the issue—he *was* heard on the issue. After the Court prodded him, Pawar submitted an opposition to the Rule 11 motion. (Sanctions Opp., Dkt. 75.) Once again, despite now stating that he did not know that he was the subject of the Rule 11 motion at the time that he submitted his opposition (Recon. Mem., Dkt. 82, at 3), the opposition itself attacked City Defendants' arguments about how Pawar failed to conduct a reasonable investigation under the circumstances (Sanctions Opp., Dkt. 75 ¶¶ 20, 21) and cited law about the extent of a lawyer's obligation to conduct a reasonable investigation under the circumstance (*id.* ¶¶ 25–26). The fact that Pawar filed an opposition to the Rule 11 motion and, in it, directly confronted the argument that he failed to conduct an inquiry that was reasonable under the circumstances, citing relevant case law on Rule 11, directly contradicts his argument that he was not given notice of the conduct for which he was sanctioned, or an opportunity to defend against those allegations by explaining his side of the story.[26]

For the reasons explained above, Pawar's argument that "the Movant was not afforded Due Process" (Recon. Mem., Dkt. 82, at 5) does not warrant reconsideration.

---

[26] The cases that Pawar cites to in his brief in the section on due process are wildly inapposite to the facts of this case, where Pawar was given ample notice of the challenged conduct and multiple opportunities to respond to the charges. For example, in *Sakon*, the district court, in deciding a motion to dismiss that did not request sanctions, *sua sponte* sanctioned an attorney without providing the attorney any notice that the court was considering sanctions, let alone an opportunity to argue against them. 119 F.3d at 114.

**IV.    Pawar's Conduct After Filing the SAC**

As noted, this Court sanctioned Pawar for his failure to conduct an investigation that was reasonable under the circumstances before filing the SAC.  Because of Pawar's arguments on reconsideration, however, the Court is compelled to note that Pawar's actions after filing the SAC—as established through this very motion for reconsideration—reinforce the Court's conclusion that Pawar's conduct in this case has not been reasonably diligent and falls far short of the requirements of Rule 11.

Pawar filed the SAC on March 9, 2020.  (SAC, Dkt. 33.)  On July 7, 2020, City Defendants came to Pawar with the information about Kirkland.  (Shin Decl., Dkt. 83-1, ¶ 9; Motion for Evidentiary Hearing, Dkt. 42, at 3.)  On July 13, 2020, City Defendants provided Pawar with a supplemental Rule 26(e) disclosure about Kirkland.  (Rule 26 Disclosure, Dkt. 82-3.)  Pawar now complains that the disclosure did not contain Kirkland's phone number (Tr. II at 4:16–20), but at the time, Pawar did not ask for the phone number (Email Exchange, Dkt. 82-4).  Instead, Pawar opposed an evidentiary hearing, even after City Defendants thoroughly laid out the information presented by Kirkland in a filing with the Court.  (Motion for Evidentiary Hearing, Dkt. 42.)  Pawar's failure to ask for Kirkland's phone number at that time, and conduct his own investigation, demonstrates a lack of diligence.  At oral argument on the motion for reconsideration, Pawar blamed City Defendants for not providing Pawar with additional information on Kirkland, but Pawar could have sought that information through a Rule 34 document request.  The onus was on Pawar to conduct his own investigation, and he utterly failed to do so.

As this Court discussed in detail above, Pawar's decision to withdraw from this case after receiving the photographs, rather than withdraw the SAC—when Heaston had authorized him to do so—was also completely inappropriate.  The Court is deeply concerned by the fact that, even as of the oral argument on this motion, Pawar seems to believe that withdrawing as counsel, rather

than withdrawing the SAC, was the correct course of action. (*See, e.g.*, Tr. II at 4:21–25.) While Pawar acknowledged that he "should have done something more than [he] did," he seemed to defend his decision to withdraw by asserting that he thought that City Defendants would seek sanctions against him even if he withdrew the case. (Tr. II at 48:13–25.) The Court is perplexed by that argument, especially given Pawar's attempt to rely on Rule 11's safe harbor provision. Had Pawar withdrawn the case, he would have cured the defective pleading, and City Defendants would have needed to withdraw their Rule 11 motion to sanction Pawar, as they did with respect to Heaston after his new counsel withdrew the case. (*See* Sanctions Reply, Dkt. 57, at 4 n.3.) City Defendants still might have sought sanctions against Pawar under the Court's inherent powers but, at the very least, Pawar would have been in a far better position to argue against sanctions.

That error of judgment was compounded by the fact that, after withdrawing and being served with the Rule 11 motion, Pawar did nothing to attempt to correct the record. Instead, he remained silent as the deadline to file a response expired. While conceding that he received the motion and reply papers (Tr. II at 38:20–23), Pawar now asserts that—at that time—he did not read them (Dkt. 88 at 1 n.1). That admission is not the defense that Pawar apparently thinks it is, but another example of his lack of diligence.

Pawar's opposition to the sanctions motion also demonstrates a remarkable lack of diligence. As noted, in his opposition, Pawar raised almost none of the arguments that he is now raising on this motion for reconsideration. Worse yet, Pawar continues to assert, even as of oral argument on the reconsideration motion, that he was not aware that he was the target of sanctions when he filed his opposition to the sanctions motion[27] (Recon. Mem., Dkt. 82, at 3; Tr. II at 27:14–

---

[27] Pawar goes so far as to suggest that he did not file a real opposition or that the filing was merely *pro forma*, either or both because he did not realize that he was the target of the sanctions

21)—which, if true,[28] means that Pawar did not even review his opposition while drafting his motion for reconsideration, since Pawar's opposition clearly indicates that he knew he was the target of the sanctions motion. (*See generally* Sanctions Opp., Dkt. 75.) Furthermore, at oral argument, Pawar stated that he still did not have the transcript of the evidentiary hearing, where he stated that he knew that he was the subject of the sanctions motion. (Tr. II at 11:22–23.) This is, quite frankly, shocking. The transcript was publicly filed on the docket on February 12, 2021. (Tr., Dkt. 77.) Furthermore, the transcript, with reference to its ECF docket number, was cited repeatedly in this Court's Memorandum & Order on the contempt motion. (M&O, Dkt. 78.) The fact that Pawar did not review that publicly available transcript before filing his motion for reconsideration displays an egregious lack of diligence. Lastly, Pawar's explanation that he did not raise the arguments he now raises when he filed his opposition to the motion for sanctions because he simply did not believe that the Court would sanction him again displays a lack of diligence. (Tr. II at 11:2–3, 51:18–19.) No responsible attorney, when faced with a sanctions motion, would fail to take it seriously, especially when the attorney himself believes that fraudulent allegations or filings likely were made by him and his client.[29]

---

motion and/or because he did not believe that the Court would actually sanction him (as opposed to only Heaston). (Tr. II at 11:2–3, 51:18–19 (Pawar explaining that he did not raise in his opposition the arguments he now raises on reconsideration because he simply did not believe the Court would sanction him).)

[28] The Court, of course, as discussed above, finds this claim incredible, along with Pawar's representation now that he did not know that he was the subject of sanctions when he withdrew from this case—a claim again contradicted by his opposition to the motion for sanctions. (*See generally* Recon. Mem., Dkt. 82; Sanctions Opp., Dkt. 75, ¶ 17.)

[29] At the evidentiary hearing, the Court declined to hear testimony from the arresting officers to establish that they had probable cause to arrest Heaston, explaining, in substance, that whether the officers had probable cause to arrest Heaston was irrelevant to the Court's

Even the one argument that Pawar makes in his motion to reconsider that he could not have made in his original opposition demonstrates a lack of diligence.  In pointing out that Pawar received the photographs on August 3, 2020 and not on May 8, 2020—as this Court erroneously found in its sanctions order—Pawar asserts without any support that City Defendants presented the Court with the incorrect date, even going so far as to suggest that City Defendants should be sanctioned.  (Recon. Mem., Dkt. 82, at 9–10; Recon. Reply, Dkt. 87, at 10.)  However, even a cursory review of the Court's decision, and the transcript cited therein, would have made it clear that the Court's error was based on the communication breakdown between Pawar and the City

---

determination of whether Pawar's reliance on his client's allegations warranted sanctions under Rule 11 or the Court's inherent authority:

> So[,] the claim that Mr. Pawar alleged in the complaint is that there was no probable cause.  But that may not be the case, based on further discovery or other evidence that would be brought to bear in this case.  Namely, maybe that the officers really had probable cause because they knew this whole thing was a scam or they believed that Mr. Heaston had burglarized the apartment before.  That doesn't make Mr. Pawar's conduct violate Rule 11, nor do I think it supports my inherent authority to find Mr. Pawar did anything wrong.

> The allegations he put into the complaint were based -- and I should credit this testimony today -- upon the plaintiff's allegations.  There is always another side to the story; and, obviously, that's what the defense would have brought out, which was that there was probable cause based on other evidence that Mr. Pawar was unaware of at the time he filed the complaint.

> So[,] I'm not sure that it will probably change things much for me to know that in fact the officers had probable cause for the arrest.  The question becomes: How would Mr. Pawar have known any of this information?

(Tr., Dkt. 77, at 213:24–214:19.)  However, the Court's view that this particular probable cause evidence was irrelevant, of course, does not apply to everything Pawar learned after filing the initial complaint indicating that Heaston's claims might be false and that investigation was warranted, and a review of the evidentiary hearing transcript makes it abundantly clear that the Court reserved judgment on that issue.  (*Id.* at 214:16–216:4.)

Defendants during Pawar's hearing testimony, and not on any misinformation fed to the Court by City Defendants, as Pawar insinuates.

Pawar's lack of diligence in handling this matter is further demonstrated by another of his arguments on reconsideration.   At oral argument, Pawar explained that, the day before the argument, he contacted for the first time the Queens County Civil Court about Borris Inc.'s motion to vacate the allegedly fraudulent Housing Court order obtained by Heaston.   In response to his inquiry, Pawar received a record from the Queens County court indicating that Borris Inc.'s motion to vacate had been denied on March 6, 2020, which, Pawar noted, was just three days before the private defendants settled with Heaston.   (Tr. II at 7:1–4, 11:24–12:4, 42:12–46:20, 45:7–9.) Although Pawar intended this evidence to show that he was justified in believing Heaston and filing the SAC, it has the opposite effect: it demonstrates the type of diligent investigation and monitoring of the Housing Court docket that Pawar could and should have done during the litigation.   Certainly, had Pawar found this evidence before filing the SAC, that might have weighed in his favor with respect to the sanctions motion.   But he did not; instead, as Pawar conceded at oral argument, he did not even know about the denial until *the day before oral argument on the motion for reconsideration*.   This only reinforces the conclusion that Pawar failed to act with reasonable diligence throughout this case.

Finally, at oral argument, Pawar argued that solo practitioners "don't have the luxury of investigating each and every case." (Tr. II at 27:10–11.) The Court finds this argument disturbing and rejects it.   Conducting a reasonable investigation is not a "luxury," it is a duty.   All attorneys, whether solo practitioners, members of large law firms, or attorneys for the government, have the same responsibility to conduct reasonable investigations in their cases and before making any filings with the Court.   Indeed, this Court believes that most solo practitioners *do* thoroughly

33

investigate all of their cases, and *do* abide by the requirements of Rule 11.  As the Court stated at oral argument, it takes no pleasure in sanctioning Pawar, especially in a § 1983 case[30] that, at least at the outset, seemed aimed at redressing a genuine civil rights violation.  But Pawar's failure to conduct an investigation that was reasonable under the circumstances before filing the SAC—and his subsequent conduct in this case—cannot be overlooked or excused simply because the type of legal work he does is commendable or important.  Indeed, that is perhaps all the more reason he must be diligent.  By not fulfilling his basic duties as an attorney, Pawar does a grave disservice to his clients and the reputation of civil rights attorneys who tirelessly and diligently pursue their cases.[31]

## CONCLUSION

For the reasons explained in this Memorandum & Order, the motion for reconsideration is DENIED.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 10, 2022
Brooklyn, New York

---

[30] In seeking reconsideration, Pawar plays up the fact that he is a civil rights attorney who represents disenfranchised members of society.  (*See, e.g.*, Recon. Mem., Dkt. 82, at 14.)  While the Court greatly respects and appreciates attorneys who dedicate their careers to providing such valuable services, the fact that Pawar engages in this work does not excuse him from fulfilling his fundamental responsibilities as an attorney and officer of the court.

[31] The Court notes that Pawar raises no objection to the amount of the sanction imposed in this case.  Rather, he appears to be concerned only about being formally "sanctioned" on the record.  (Tr. II at 54:19–55:3.)  In fact, Pawar went so far as to propose that, instead of a sanction, he could "make a contribution to any charity the Court wants," a proposal that itself raises ethical concerns.  (Tr. II at 54:19–21.)  But the use of the word "sanction" in this case is warranted and unavoidable, and will hopefully deter Pawar and others from failing to abide by the requirements of Rule 11 and exercise reasonable diligence in their cases.

34